Fred ZUSCHEK, Ph.D.

v.

WHITMOYER LABORATORIES, INC., et al.

Civ. A. No. 75–1080.

United States District Court, E. D. Pennsylvania.

April 26, 1977.

---

Edwin Dashevsky, Donsky, Katz, Levin & Dashevsky, Philadelphia, Pa., for plaintiff.

G. Wayne Renneisen, Harvey, Pennington, Herting & Renneisen, Ltd., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

BRODERICK, District Judge.

Plaintiff brought this suit for defamation against defendants Whitmoyer Laboratories, Inc., Rohm and Haas and William P. Ambrogi. A jury trial commenced on March 28, 1977. After the plaintiff advised the Court that plaintiff had concluded the presentation of evidence as to liability, the defendant moved for a directed verdict pursuant to Rule 50. The parties argued the Rule 50 motion and the Court granted the defendant's motion for a directed verdict. This memorandum is intended to set forth the grounds upon which the Court directed a verdict for defendant.

Viewing the evidence and the inferences therefrom in a light most favorable to plaintiff, the evidence can be summarized as follows: In December 1970, plaintiff became the general manager of Affiliated Laboratories, a division of Whitmoyer Laboratories, which is a subsidiary of Rohm and Haas, defendants herein. As general manager, plaintiff was directly responsible to William Ambrogi, the President of Whitmoyer, to whom he wrote weekly and monthly reports and had frequent phone conversations and personal meetings. Plaintiff testified that during his nine months of employment he was able to improve numerous management and production problems with which he was confronted on his arrival. He also testified that during his period of employment problems developed with the research department, headed by Dr. Stuart. He testified that Dr. Stuart threatened to have him fired and went over his head to speak to Mr. Ambrogi concerning their conflict. Plaintiff was terminated by Mr. Ambrogi in September, 1971, at which time Mr. Ambrogi told him that his inability to handle professional people was the reason for his discharge.

After his discharge by the defendants in September of 1971 the plaintiff has had several positions, none of which have been directly related to animal health products, the field in which he had been employed by the defendants. The plaintiff is presently a licensed commodities broker in Oklahoma.

In the early part of 1974, the plaintiff contacted Dr. Edmonds, a friend who was interested in forming a drug company. Dr. Edmonds testified that he had the plaintiff in mind to run the drug company and asked the plaintiff for a list of his previous employers. In checking plaintiff's references, Dr. Edmonds sent a form entitled "Confidential Management Personnel Record" to Mr. Ambrogi, President of Whitmoyer Laboratories. This form, as completed by Mr. Ambrogi, is the basis of plaintiff's claim for defamation. The form requests answers to specific questions and the addition of any pertinent remarks. Mr. Ambrogi was asked to grade plaintiff as to seven "management characteristics". Five of these Mr. Ambrogi assessed as "good", one as "fair" and one as "poor". He characterized the plaintiff's attitude as both "arrogant" and "cooperative". The form also requested that he rate the plaintiff on five "personal traits". Mr. Ambrogi checked "excellent" for "willingness to work", and "poor" for "honesty", "integrity", "personality" and "moral character". On the reverse side Mr. Ambrogi wrote:

> Dr. Zuschek is an intelligent and hard working individual with driving ambition and goal orientation. However, as a manager he is very dictatorial, quite devious and often demoralizing. With close supervision, he can be very effective, but left alone, very destructive.

Mr. Ambrogi, who was called by the plaintiff, testified that he advised the plaintiff that he was being terminated because

of his inability to handle professional people and his violation of the agreement which he had made with Mr. Ambrogi concerning the handling of the conflicts which had developed in the research department. He testified that he then informed plaintiff that any reference he would be requested to provide would necessarily include the reasons for plaintiff's termination. Mr. Ambrogi also testified that plaintiff had lied to him on occasions concerning the manner in which plaintiff had carried out the instructions which Mr. Ambrogi had given to him. Mr. Ambrogi admitted completing the Confidential Management Personnel Form, which is attached hereto, and stated that it was his truthful evaluation of the plaintiff.

The deposition of Joyce Lorton, who held the position of Quality Control Manager at Affiliated Laboratories at the time plaintiff was employed at Affiliated, was read into the record with the agreement of counsel. She testified that plaintiff was very energetic, that he had a good technical background, and that he accomplished a great deal. She said that the employees who were making a genuine effort had a good relationship with him, with the exception of the person in charge of bacterian production, with whom plaintiff had a conflict. She further testified that she had no personal knowledge of any dishonesty, lack of integrity, deviousness or destructiveness on the part of plaintiff. Although she thought plaintiff was arrogant and dictatorial during the first month or two, her attitude changed. She said that she wrote a very favorable letter of recommendation concerning plaintiff at his request. Ms. Lorton also stated that Mr. Ambrogi had a senior position with Affiliated, that he had access to more facts than she did, and that she was not in a position to be aware of plaintiff's relationship with the other department heads. (Dr. Stuart was the head of the research department.)

John Leiter testified that in 1973 he telephoned Mr. Ambrogi concerning an application for employment which he had received from plaintiff, and that Mr. Ambrogi told him that plaintiff's technical qualifications were good, but that he was unreliable and didn't get along with people.

■ The parties agree that Pennsylvania law should be applied in this diversity action alleging defamation and that the law recognizes the defense of a conditional privilege whenever a prior employer evaluates a former employee at the request of a prospective employer. *Harbridge v. Greyhound Lines, Inc.*, 294 F.Supp. 1059 (E.D.Pa. 1969). *See also Dempsky v. Double*, 386 Pa. 542, 126 A.2d 915 (1956). The Scope Note to the Section in the Restatement of Torts concerning conditional privileges states:

Occasions conditionally privileged afford a protection based upon a public policy which recognizes that it is essential that true information shall be given whenever it is reasonably necessary for the protection of one's own interests, the interests of third persons, or certain interests of the public. In order that such information may be freely given, it is necessary to afford protection against liability for misinformation given in an honest and reasonable effort to protect or advance the interest in question. Were such protection not given, true information which should be given or received would not be communicated through fear of the persons capable of giving it that they would be held liable in an action of defamation unless they could meet the heavy burden of satisfying a jury that their statements were true . . . . [These conditional privileges] give protection from liability only when exercised for the purpose for which they are given and with reasonable care that no more harm shall be done to the interests of others than is necessary to accomplish the end for which the privilege is given.

Section 593 of the Restatement of Torts provides:

One who publishes false and defamatory matter of another is not liable therefor if

(a) it is published upon a conditionally privileged occasion and

(b) the occasion is not abused.

**1166**

■ The burden of proving the defense of a conditional privilege is on the defendant. 12 P.S. § 1584a. However, where a conditional privilege is established in the plaintiff's case, the defendant is entitled to a directed verdict unless the plaintiff can prove the abuse of the privilege. *Baird v. Dun & Bradstreet*, 446 Pa. 266, 285 A.2d 166 (1971). A conditional privilege was established by the plaintiff.

■ A conditional privilege can be abused, however, if the defendant: (1) acts with malice or ill will, *Baird v. Dun & Bradstreet, supra,* or for any purpose other than for protecting the particular interest for which the privilege is given, Restatement of Torts § 603, (2) does not believe in the truth of the statements, Restatement § 600, (3) although believing in the truth of the statements has no reasonable ground for so believing, Restatement § 601, (4) makes a publication outside the scope of the privilege, Restatement § 595.

■ The plaintiff presented no evidence on which the jury could find abuse of the conditional privilege. There is absolutely no evidence that Mr. Ambrogi acted out of malice or ill will, that he did not believe the truth of his statements or that he had no reasonable ground for believing what he said. Furthermore, there is no evidence that the defendant's statement fell outside the scope of the privilege. The testimony of Joyce Lorton did not contain any evidence on which a jury could find abuse of the privilege. She testified that she was unaware of plaintiff's relationship with any of the department heads, and that she at one time thought plaintiff to be arrogant and dictatorial. She gave no testimony upon which the jury could infer that Mr. Ambrogi acted out of malice or ill will, or that he did not have a reasonable basis for his opinion. She pointed out that Mr. Ambrogi had access to information that was not available to her. There was no evidence on which the jury could find that Mr. Ambrogi's statements were outside the protection of the privilege. The evidence is uncontradicted that he answered the questions on the form and made the comment on the back of the form, all in response to a request by a prospective employer.

For all of the aforementioned reasons, the Court finds that plaintiff did not present any evidence on which a jury could find abuse of the conditional privilege.

APPENDIX

*Mr. Ambrogi*

RUSSELL S. EDMONDS AND SONS, INVESTMENTS
P. O. BOX 501
POCOMOKE CITY, MARYLAND 21851
----------
CONFIDENTIAL MANAGEMENT PERSONNEL RECORD

PLAINTIFF'S EXHIBIT

The below named applicant has applied for a sensitive management position in a company owned by clients or associates or a company in which ownership or control is about to be acquired. We would appreciate your time in completing the few questions listed below and adding any remarks you consider pertinent. Many thanks for this favor and please be assured of our willingness to reciprocate.

Applicant's name: *Fred Zuschek*
Period of Employment *1 Year 1970*
Position Held *Biological Laboratory Manager*

| Management characteristics of applicant: | Excellent | Good | Fair | Poor | OTHER |
|---|---|---|---|---|---|
| Ability to get along with superiors | | ✓ | | | |
| Ability to get along with subordinates | | | | ✓ | |
| Ability to get production from subordin. | | ✓ | | | DICTATORIAL |
| Technical ability ..................... | | | ✓ | | |
| Organizing Ability.................... | | ✓ | | | |
| Loyalty............................... | | ✓ | | | |
| Attendance & Punctuality ............. | | ✓ | | | |

Attitude: ✓Arrogant; __Humble; __Neither; ✓Cooperative
__Uncooperative.

| Personal Traits: | Excellent | Good | Fair | Poor | OTHER |
|---|---|---|---|---|---|
| Honesty.............. | | | | ✓ | |
| Integrity........... | | | | ✓ | |
| Personality......... | | | | ✓ | |
| Willingness to work.. | ✓ | | | | |
| Moral character...... | | | | ✓ | |

*see over//*

Is there an addiction problem of any kind to the best of your
knowledge? _____ Yes; ✓No

Please use other side for comments and return to the above address
Attention: Dr. Russell S. Edmonds

Dr. Zuselek is an intelligent and hard working individual with driving ambition and goal orientation. However as a manager he is very dictatorial, quite devious, and often demoralizing. With close supervision he can be very effective, but left alone, very destructive.