Cove **HOOVER**

v.

**PEERLESS PUBLICATIONS, INC.,**
**and Ellis Rietzel.**

**Civ. A. No. 78–1299.**

United States District Court,
E. D. Pennsylvania.

Dec. 18, 1978.

---

Steven M. Kramer, Julie T. Barsel, Philadelphia, Pa., for plaintiff.

Curtis P. Cheyney, III, Philadelphia, Pa., for defendants.

## OPINION

LUONGO, District Judge.

Plaintiff filed the original complaint in this libel action on April 19, 1978. The complaint alleges that on September 9, 1977, defendant Rietzel sent a letter containing defamatory statements about plaintiff to the general manager of the Valley Sentinel, a newspaper with which plaintiff had sought employment. Jurisdiction is based solely on diversity of citizenship. 28 U.S.C. § 1332 (1976). Presently before me is defendants' motion for judgment on the pleadings. For the reasons hereafter stated, I conclude that this motion should be denied.

A brief review of the procedural history of this case may be helpful. Plaintiff filed his original complaint on April 19, 1978, and his first amended complaint on April 25, 1978. *See generally* Fed.R.Civ.P. 15(a). Pursuant to a stipulation for an extension of time, defendants filed their answer on June 19, 1978. Defendants then moved for judgment on the pleadings, asserting that the complaint failed to state a claim upon which relief could be granted. *See generally* Fed.R.Civ.P. 12(h)(2) ("A defense of failure to state a claim upon which relief can be granted . . . may be made . . by motion for judgment on the pleadings . . . ."). Plaintiff then moved for leave

to amend the complaint, and I granted that motion by order dated August 29, 1978. When plaintiff then failed to file his second amended complaint with the court,[1] I advised plaintiff's counsel to do so. At the same time, I requested of counsel for both sides supplemental briefs on the defense of qualified privilege, which was raised in defendants' answer. Plaintiff filed his second amended complaint on October 16, 1978, and defendants answered that complaint on October 24, 1978. Counsel then furnished the requested briefs. On November 3, plaintiff moved to strike the recently-filed second amended complaint and to substitute therefor the "correct" second amended complaint, which was attached as Exhibit B to plaintiff's motion. Document No. 27. Defendants acquiesced in this substitution, and I granted the motion by order dated November 7, 1978. On November 9, plaintiff filed his corrected second amended complaint. Document No. 29. On November 20, defendants filed their answer to the corrected second amended complaint. Document No. 30. Although defendants have not specifically renewed their motion since the most recent amendment to the complaint, it is my understanding that their legal arguments, as set forth in their briefs, apply to the corrected second amended complaint just as much as they applied to the first amended complaint. I will therefore proceed to consider defendants' motion for judgment on the pleadings.

In resolving a motion for judgment on the pleadings, "all well-pleaded material allegations of the opposing party's pleading are to be taken as true, and all allegations of the moving party which have been denied are taken as false." 2A Moore's Federal Practice ¶ 12.15 at 2343 & n.7 (2d ed. 1948) (collecting authorities).

The corrected second amended complaint alleges that defendant Rietzel sent a letter to the general manager of the Valley Sentinel, a newspaper with which plaintiff had sought employment, and that this letter contained false defamatory statements concerning plaintiff. Defendants admit in their answer that the letter, attached as Exhibit A to the corrected second amended complaint, was sent in response to an inquiry from the Valley Sentinel regarding plaintiff's qualifications for employment with that newspaper. The letter begins by referring to plaintiff's tenure as an executive with the Gannett newspaper chain, and noting that plaintiff later came to be publisher of the Delaware Valley Times, an Ingersoll newspaper with offices in Chester, Pennsylvania, during "turbulent Guild negotiations which deteriorated into a long strike situation." It then continues:

"It is my understanding that Mr. Hoover had some mental problems while with the Gannett chain, and they put him on some sort of retirement program. Whether the situation in Chester brought on further mental problems or whether they were there to begin with, I would not venture to say. In any event it was felt that a separation would be in the best interests of both the newspaper and Mr. Hoover.

In answer to your questions, specifically—'Would the group rehire him?' Probably not on the basis of 'once burned . . . .'.

'Is he a qualified executive?' Depending on his mental condition at this time.

'An able news man?' Under normal conditions, yes.

'A sound individual?' I think the above will answer this question."

Plaintiff's corrected second amended complaint alleges that these false and defamatory statements have injured his "reputation as a publisher, editor and businessman," and that his "physical well-being"

---

1. Plaintiff properly attached a copy of the proposed second amended complaint to his motion for leave to amend, and plaintiff filed this motion with the court and served a copy on defendants. Although the Federal Rules of Civil Procedure do not expressly require that an amended pleading be filed afresh once the court grants leave to amend, I believe that this is the preferable approach. *Compare International Controls Corp. v. Vesco*, 556 F.2d 665, 668–69 (2d Cir. 1977) *with Smith v. Insurance Co. of N. America*, 30 F.R.D. 540, 542 (M.D. Tenn.1962).

has also been injured. Complaint ¶¶ 15, 16. Plaintiff seeks compensatory and punitive damages. The parties have assumed, and I agree, that Pennsylvania libel law governs this action.

Defendants' motion challenges the sufficiency of plaintiff's allegations. Their memoranda of law advance several arguments in support of the view that the complaint fails to state a claim upon which relief may be granted.

First, defendants argue that the complained-of letter can only be construed as "an expression of the writer's opinion based on information received from many sources and without any reasonable warrant of the completeness or accuracy of the information." Defendants' Memorandum of Law (Document No. 21) at 3. Such an expression of opinion, they urge, cannot give rise to liability for defamation. Defendants thus invoke the subtle and still-evolving rules governing liability for expressions of derogatory opinion, as opposed to statements of fact. *See generally* Restatement (Second) of Torts § 566 & Comments b & c (1977). However, I conclude that the opinion-versus-fact distinction cannot aid defendants here.

■ To begin with, two particularly damaging portions of Rietzel's letter seem not to be expressions of opinion at all. Rietzel's statement that plaintiff "had some mental problems" when he was with the Gannett chain appears to be an ordinary statement of fact. Defendants suggest that this is actually an expression of opinion, on the ground that Rietzel simply collected information from others and passed it along, without personally vouching for it, in his letter. But this argument would make an "opinion" out of every statement that is not based on personal knowledge. Thus, on defendants' view, if Rietzel had written "John Smith told me that Mr. Hoover had some mental problems," Rietzel still would have expressed only an opinion and he still would be shielded from liability. This approach, of course, runs counter to the black-letter rule that one who republishes a libel is subject to liability just as if

he had published it originally, even though he attributes the libelous statement to the original publisher, and even though he expressly disavows the truth of the statement. *See, e. g.,* Restatement (Second) of Torts § 578 & Comments b & e (1977); L. Eldredge, The Law of Defamation § 44 at 232–33 (1978). Thus, Rietzel's statement that plaintiff "had some mental problems" while at the Gannett chain cannot be treated as an expression of opinion simply because Rietzel may have lacked first-hand knowledge of the underlying events.

Much the same may be said of Rietzel's statements regarding plaintiff's experience in Chester. These statements, quoted earlier, rather clearly imply that plaintiff experienced further mental problems of some sort while working in Chester. Once again, these statements cannot be deemed expressions of opinion merely because Rietzel was passing on information gleaned from other sources. Too, Rietzel's explicit refusal to comment on the *cause* of plaintiff's difficulties further suggests that these statements are perfectly ordinary statements of fact, rather than expressions of opinion.

■ Even were I to assume, for present purposes, that the statements regarding plaintiff's troubles while at the Gannett chain and while in Chester were expressions of opinion, that would not change the result here. The courts have distinguished between "pure" expressions of opinion, which are based on stated or mutually assumed facts, and "mixed" expressions of opinion, which suggest the existence of unstated (defamatory) facts supportive of the writer's opinion. *See* Restatement (Second) of Torts § 566, Comment b (1977). The statements just discussed, if they are expressions of opinion at all, would fall in the category of "mixed," rather than "pure," expressions of opinion, for the present record discloses no stated or assumed facts on which Rietzel's conclusions might have been based. The basic rule regarding a "mixed" expression of opinion is that it "is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion." *Id.* § 566. The court, rather than the

jury, determines "whether an expression of opinion is capable of bearing a defamatory meaning because it may reasonably be understood to imply the assertion of undisclosed facts that justify the expressed opinion about the plaintiff." *Id.* Comment c; *see, e. g., Vitteck v. Washington Broadcasting Co.,* Pa.Super., 389 A.2d 1197, 1199 (1978) (the court, not the jury, determines whether a communication is capable of bearing a defamatory construction). In this instance, I believe the jury might reasonably find that these statements suggested the existence of undisclosed defamatory facts supporting the conclusion that plaintiff had experienced mental difficulties of some sort. Indeed, defendants' suggestion that Rietzel merely collected and summarized information regarding plaintiff only bolsters the dual inferences that Rietzel knew of such facts and that the views set forth in his letter were based on such facts. Again, it matters not whether Rietzel intended to vouch for the accuracy of such underlying facts; his statements, assuming them to be expressions of opinion at all, are capable of bearing a defamatory meaning simply because the jury might infer that his conclusions were based on such facts, which were nowhere stated in the letter.

In sum, whether they are viewed as statements of fact or as "mixed" expressions of opinion, several statements in Rietzel's letter are plainly capable of bearing defamatory meaning. Having reached that conclusion, I must reject defendants' suggestion that the letter contains only non-actionable expressions of opinion and that plaintiff has therefore failed to state a claim.

Defendants' second argument in support of their motion warrants only brief discussion here. The argument, in its entirety, appears at the conclusion of defendants' initial memorandum:

"Because Pennsylvania law requires proof of the nature of the audience reaction of hearing the remark as bearing on whether the complained-of wording is capable of a defamatory meaning, the absence of any allegation within the Complaint that Mr. Rapp [of the Valley Senti-

nel] failed to hire the Plaintiff and construed the language as defamatory is indicative that the language was not damaging, and therefore, it is not actionable." Defendants' Memorandum of Law (Document No. 21) at 3.

■ As I understand the argument, defendants contend that plaintiff has failed to state a claim because he has not specifically alleged that Mr. Rapp, the recipient of Rietzel's letter, interpreted the letter as defamatory of plaintiff. This position is simply untenable. At trial, of course, plaintiff will bear the burden of proving that Mr. Rapp so understood the letter. *See Pierce v. Capital Cities Communications, Inc.,* 576 F.2d 495, 502 (3d Cir.), *cert. denied,* —— U.S. ——, 99 S.Ct. 181, 58 L.Ed.2d 170 (1978); 42 Pa.Cons.Stat.Ann. § 8343(a)(4) (Purdon Supp.1977) (recodifying Pa.Stat.Ann. tit. 12, § 1584a(1)(d) (Purdon Supp.1978)). But plaintiff need not specifically so allege, for that element of his prima facie case may readily be inferred from the corrected second amended complaint. Plaintiff there alleges that Rietzel's letter contained false and defamatory statements concerning plaintiff, that the letter was sent to Mr. Rapp, and that plaintiff's reputation was thereby injured. These allegations lead readily to the inference that Mr. Rapp understood the letter to defame plaintiff. To grant judgment for defendants based on plaintiff's failure to specifically plead this point would run counter to the mandate of Rule 8(f) that "[a]ll pleadings shall be so construed as to do substantial justice." Accordingly, I cannot accept this argument as a basis for granting defendants' motion.

■ Defendants' third, and final, argument also merits only a brief comment. This argument draws on the common-law qualified privilege afforded by Pennsylvania law "whenever a prior employer evaluates a former employee at the request of a prospective employer." *Zuschek v. Whitmoyer Laboratories, Inc.,* 430 F.Supp. 1163, 1165 (E.D.Pa.1977) (citations omitted). I may assume for present purposes that this privilege is available to defendants although the pleadings do not suggest that

any of them were prior employers of plaintiff. Passing over that point, however, plaintiff alleges that defendants acted "maliciously, knowingly, intentionally or in reckless disregard of the truth of the statements made." Complaint ¶ 14. Defendants deny this allegation. If proved, however, the allegation that defendants acted maliciously could cause them to forfeit the protection of this qualified privilege. *See, e. g., Zuschek v. Whitmoyer Laboratories, supra,* 430 F.Supp. at 1166; Restatement (Second) of Torts §§ 599–605A (1977). As a result, I cannot enter judgment on the pleadings for defendants based on this qualified common-law privilege.

In summary, defendants' arguments in support of their motion are unpersuasive. Accordingly, I will enter an order denying their motion for judgment on the pleadings.