In re Tobin FRYMIRE, Debtor.

Tobin FRYMIRE, Plaintiff,

v.

PAINEWEBBER, INC., Lee H. Lovejoy, and Edward Sparkman, Trustee, Defendants.

Bankruptcy No. 87–03721S.
Adv. No. 88–0341S.

United States Bankruptcy Court, E.D. Pennsylvania.

June 24, 1988.

Jerome H. Ellis, Glenside, Pa., and Mitchell W. Miller, Philadelphia, Pa., for debtor.

Gale White, Philadelphia, Pa., for defendants/Painewebber, Inc. and Lovejoy.

Edward Sparkman, Philadelphia, Pa., defendant trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

We herein consider that portion of a motion by PAINEWEBBER, INC., the corporate former employer of the Plaintiff–Debtor which was the sole original Defendant in this proceeding (hereinafter referred to as "PW"), seeking to dismiss those Counts of the Debtor's Amended Complaint based upon defamation (Count II) and intentional infliction of emotional distress (Count III). We shall grant the motion in part and proceed to dismiss Count III, but not Count II, of the Amended Complaint.

This adversarial proceeding was filed on February 17, 1988, in the form of an Objection to a Proof of Claim filed by PW and a Counterclaim by the Debtor. The original Complaint merely incorporated a previously-filed state court Complaint of the Debtor against PW. On February 29, 1988, PW filed a motion to dismiss the entire Complaint on the grounds that: (1) Only the Trustee had capacity to bring this suit, which was in the nature of a claim of the estate; and (2) We should stay all proceedings pending the completion of an arbitration process commenced by PW in 1986 against the Debtor before the National Association of Security Dealers (hereinafter referred to as "NASD"), to recover $30,-000.00 allegedly due from the Debtor to it, in which proceeding the Debtor had also asserted a counterclaim against PW. PW also moved at that time, as in the motion before us, to dismiss the counts of the incorporated state court Complaint based on defamation and intentional infliction of emotional distress (hereinafter referred to as "IIED").

After argument before us by counsel on April 6, 1988, at which the Debtor's counsel advised that he would be filing an Amended Complaint to flesh out the defamation and IIED claims, we denied the Motion to dismiss in an Order of April 7, 1988, expressly conditioned upon the Debtor's (1) Not pursuing his own Counterclaims simultaneously in the NASD arbitration forum; and (2) Joining the Trustee as a party; and (3) Filing a more detailed Statement of his defamation and IIED claims on or before April 18, 1988.[1]

In that same Order, we established numerous pretrial deadlines, including the filing of any dispositive motions on or before July 8, 1988, and setting a trial date of August 11, 1988.[2]

On April 18, 1988, the Debtor indeed did file an Amended Complaint joining as additional defendants not only the Trustee, EDWARD SPARKMAN, ESQUIRE,[3] but also LEE H. LOVEJOY, his former supervisor at PW (hereinafter referred to as "Lovejoy"). (Hereinafter, PW and Lovejoy are referred to collectively as "the Defendants," as the Trustee has not actively participated in this proceeding.) On May 5, 1988, PW filed the intant motion, again seeking dismissal of the entire Complaint

---

**1.** We based our denial of the contention that the Debtor lacked standing on our conclusion that 11 U.S.C. § 323, which provides that the Trustee would have capacity to bring this suit and which was cited as authority by PW on this point, was not intended to bar the Debtor from so proceeding as well. *See In re Morrison,* 69 B.R. 586, 588–90 (Bankr.E.D.Pa.1987). Joinder of the Trustee as a party eliminated the potential of multiple liability of PW to the two parties entitled to maintain this proceeding. *See In re Dinkins,* 79 B.R. 253, 258 (Bankr.E.D.Pa.1987). We declined to exercise our discretion to stay this proceeding pending the NASD arbitration because we believed that we could resolve this matter more expeditiously than it could be resolved through that process. We noted that the

parties' contractual agreement to arbitrate such disputes was not binding upon us. *See Zimmerman v. Continental Airlines, Inc.,* 712 F.2d 55, 56, 59–60 (3d Cir.1983). *Cf. In re T.D.M.A., Inc.,* 66 B.R. 992, 995–97 (Bankr.E.D.Pa.1986).

**2.** In a subsequent Order resolving a discovery dispute, we pushed those dates back to August 15, 1988, and September 27, 1988, respectively.

**3.** It would have appeared more logical to join him as a party Plaintiff. *See Dinkins, supra,* 79 B.R. at 258. However, it does not appear that the Trustee will actually participate in this proceeding, and no party has objected to his designation as a party defendant.

and, particularly, Counts II and III thereof, on all of the same grounds recited in the motion to dismiss the original Complaint, except the "lack of capacity to sue" contention, accompanied by an extensive Memorandum of Law. On May 11, 1988, we entered an Order again denying the request to stay the proceeding pending NASD arbitration, but reserving decision on dismissal of Counts II and III of the Amended Complaint until after the Plaintiff was accorded an opportunity to file a Brief in response to the Defendants' Memorandum of Law, on or before June 3, 1988.

For purposes of deciding the instant matter, we must assume that all allegations of the Amended Complaint are true and can grant the motion only if we are able to conclude that the Debtor could not possibly amend his complaint to preserve the Counts which are under attack. *See Dinkins, supra,* 79 B.R. at 256–57; and *In re Littles,* 75 B.R. 240, 241 (Bankr.E.D.Pa. 1987).

The Amended Complaint states that, in June or July, 1984, PW, a securities dealer and broker, and Lovejoy, as PW's agent, encouraged the Debtor to leave his employment at Merrill, Lynch, Pierce, Fenner, and Smith, a competitor (hereinafter referred to as "Merrill"), by promising him, *inter alia,* an immediate $40,000.00 payment, one-fourth of which would be forgiven as of each subsequent employment anniversary. By means of, *inter alia,* alleged delays in payments of $40,000.00 and his salary and by depriving him of adequate secretarial resources, the Plaintiff contended that the Defendant rendered his employment situation intolerable to attempt to induce him to resign and avoid the forgiveness of the complete $40,000.00 debt. When he refused to resign, the Defendants allegedly wrongfully terminated his employment on or about July 31, 1986. At this time, having passed his first anniversary, he owed $30,000.00 of the $40,000.00 loan made at the time of employment.

Thereafter, the Debtor returned to his former employment at Merrill. At some indeterminate date thereafter, Merrill sent a form to the Defendants inquiring about their experience with the Debtor. In reply to a question as to whether the Defendants would re-employ the Debtor, Lovejoy, filling out the form, responded "No." In reply to an inquiry "If not, why?", Lovejoy responded, "Poor attitude + Less than satisfactory production."

The Debtor alleged in his Amended Complaint that these statements on the form were "either knowingly or intentionally false and defamatory or were made recklessly and with malicious intent to cause serious injury and public and private embarrassment to [him]." The Debtor claimed that, as a result, he became emotionally upset; was unable to perform at his new employment at Merrill, resulting in his discharge therefrom on or about May 19, 1987; and has been subsequently unable to obtain further employment in the securities industry because of his having been discharged by two companies in this field.

The Amended Complaint is in three Counts. In addition to Counts II and III, which are in issue here, Count I recites a cause of action for fraud, based upon the Defendants' allegedly inducing him to leave Merrill on the basis of false promises.

With respect to Count II, the Defendants make three arguments: (1) The limited statements made are incapable of a defamatory meaning; (2) The statements are merely opinion; and (3) As an employer evaluating a past employee, the Defendants' statements are absolutely privileged.

We shall initially consider the third argument recited above. PW's authority for the contention that statements made by an employer in an evaluation of an employee are absolutely privileged is the statement in *Sobel v. Wingard,* 366 Pa.Super. 482, 531 A.2d 520, 522 (1987), that "[a]n employer has an absolute privilege to publish defamatory matters in notice of employee terminations." The *Sobel* court explains that this arises because "evaluations of an employee by an employer are deemed to be consented to by the employee," citing *Baker v. Lafayette College,* 350 Pa.Super. 68, 504 A.2d 247 (1986), and the court's conclu-

sion that "[c]onsent is an absolute privilege." *Id.*

We refuse to accept these statements of the *Sobel* court at face value. First, we note that they are dictum, because they follow the court's holding that the published material in issue, a letter sent to the plaintiff, a substitute teacher, with copies to two other school officials, discharging the plaintiff for certain perceived problems in performance of his duties, was not defamatory. *Id.* The authorities cited by the *Sobel* court are *Baker, supra; Agriss v. Roadway Express, Inc.,* 334 Pa.Super. 295, 483 A.2d 456 (1984); and *DeLuca v. Reader,* 227 Pa.Super. 392, 323 A.2d 309 (1974). However, *Agriss* and *DeLuca* both involved the issue of whether the contents of a notice of the reasons for dismissal of an employee, which notice was required to be provided to a discharged employee under a collective bargaining agreement, was absolutely privileged. In these cases, it was held that an absolute privilege attached because, in requiring that such a notice be given, the employee was consenting that such a notice be published, at least between the parties. *But see, Agriss, supra,* 334 Pa.Super. at 311–14, 483 A.2d at 464–67 (dissemination of a notice of dismissal to parties not authorized to receive same destroys the privilege). As *Baker* points out, some basis for consent must be presented before the contention of absolute privilege can be successfully asserted. 350 Pa.Super. at 68, 72–75, 504 A.2d at 249–51 (term in contract incorporating a college handbook which requires a notice of dismissal provides consent). *But see* 350 Pa.Super. at 107–16, 504 A.2d at 267–72 (Spaeth, J., dis. op.) (argues that no proof of consent was given and hence the privilege should be conditional only).

■ Thus, if no consent of the employee to the publication of his evaluation by his employer has been established, by a collective bargaining agreement or otherwise, no absolute privilege should attach. This is the conclusion reached by our district court, interpreting Pennsylvania law, to which we must pay particular deference, in *Zuschek v. Whitmoyer Laboratories, Inc.,*

430 F.Supp. 1163, 1165–66 (E.D.Pa.1977). There, the court held that the privilege of a former employer in evaluating a former employee at the request of a prospective future employer is only a qualified privilege, which may be overcome by an averment, as here, of malice as well as falsity. Clearly, this is the rule in the vast majority of American jurisdictions. *See* Annot., *Defamation: Loss of Employer's Qualified Privilege to Publish Employee's Work Record or Qualification,* 24 A.L.R. 4th 144, 153–67 (1983). Absolute privilege only arises, and even then in only certain jurisdictions, in communications among the employees of the employer making the evaluative statement or in communications with union officials. *See* Annot., *Libel & Slander: Privileged Nature of Communication to Other Employees or Employees' Union of Reasons for Plaintiff's Discharge,* 60 A.L.R.3d 1080 (1974).

■ We therefore decline to follow the dictum in *Sobel,* if it is so interpreted, that an employer is absolutely privileged to publish defamatory statements in an evaluation of an employee disseminated to outside parties, such as subsequent employers. Rather, at least in the absence of consent, the privilege should be conditional. Since there is no evidence of any contractual relationship between the parties here from which consent to publish the communique to Merrill can be inferred on this record, and malice on the part of the employer is averred, we decline to dismiss this Count on the basis that the communication was privileged.

■ The authorities for the Defendants' contention that the publication was not defamatory are *Bogash v. Elkins,* 405 Pa. 437, 176 A.2d 677 (1962); and *Gordon v. Lancaster Osteopathic Hospital Ass'n,* 340 Pa.Super. 253, 489 A.2d 1364 (1985). In *Bogash,* the allegedly defamatory publication was a statement by the editor of a retail druggists' organization newsletter charging that the secretary of the organization "stalled and maneuvered" the organization's Executive Committee to prevent him from using the organization's emblem. These facts seem somewhat remote

from the employer-employee context of the case at bar. More factually analogous is *Gordon*, which involved an allegedly defamatory publication of letters from certain physicians employed by a hospital to the hospital's Executive Director requesting that he refuse to renew the employment contract of the plaintiff-physician because they were "totally unhappy and would like to present a vote of no confidence in" the plaintiff. The *Gordon* court concluded that these statements were not defamatory because "if believed, [they] do not impute a charge of incompetence." 340 Pa.Super. at 262, 489 A.2d at 1369. By way of contrast, the statements here, particularly the reference to overall "less than satisfactory production" by the Debtor, certainly do impute a belief of a lack of competence of the Debtor to perform his job. The statement is not, as in *Bogash*, a mere expression of opinion which portrays disappointment. 405 Pa. at 440–41, 176 A.2d at 679. The language here, then, *is* capable of a defamatory meaning, and this Count will not be dismissed on this basis.

■■■ The final argument of PW as to Count II is that the statements in issue were merely opinion and hence not actionable. This contention arises from the statement, in *Gordon*, that the letters in issue "are expressions of opinion. Opinion without more is not actionable libel." 340 Pa.Super. at 163, 489 A.2d at 1369. *See also Bogash, supra,* 405 Pa. at 440, 176 A.2d at 679. ("Statements which represent differences of opinion ... are not libelous"). In fact, it is properly stated, as in *Bogash*, that only statements representing differences of opinion are not actionable; an expression of an opinion, rendered as a perceived statement of fact, may indeed be actionable. *See* 50 AM.JUR.2d 529 (1970). Thus, what we believe is meant by the above-quoted statement in *Gordon* is that publications which are definitely qualified as being simply an opinion, about which there could clearly be a point of difference, are not actionable. All statements, defamatory or otherwise, are, to a certain degree, expressions of the opinion of the party making them. However, if a party publishes a falsehood about another malicious-

ly, i.e., knowing that it is false, this should be actionable, even if the statement is "merely" the opinion of the person giving it.

■■■ The statements in issue here are in no sense or form qualified as being merely opinions about which differences could be expressed. Rather, they are evaluative pronouncements by the Plaintiff's former supervisor, which state judgmentally that the Debtor had a poor attitude and did not produce satisfactorily on the job. We do not think that the fact that they express opinions of Lovejoy or PW renders them necessarily non-actionable. Hence, this basis for dismissal of Count II fails as well.

We emphasize that, in denying PW's motion to dismiss, we are not finding that the Debtor has a strong case or a great probability of ultimate success in his defamation claim. The Defendants may be able to prove that the Debtor *did* in fact have a poor attitude and *did* produce unsatisfactorily on the job, or at least be able to establish that they reasonably concluded that such evaluations were justified. Obviously, an employer needs some leeway in providing evaluations of employees to future employers lest past employers be discouraged from providing any but complimentary evaluations of even the worst former employees. On the other hand, an evaluation by a past employer which is false and malicious can cause great harm to an employee and should, in egregious cases, be actionable. Our judgment, from merely review of the Amended Complaint, is that it is unlikely, but not impossible, that the Debtor could successfully establish that he was actionably defamed by the Defendants. This being our state of mind, we are required to conclude that the Debtor has cleared the very low threshold necessary to avoid dismissal of Count II of the Amended Complaint.

■■■ However, we cannot express even this limited charity towards Count III of the Amended Complaint, alleging a cause of action for IIED. The tort of IIED, while clearly recognized in Pennsylvania as recited in 1 RESTATEMENT (SECOND) OF

TORTS, § 46, at 71–80 (1965), requires that the defendant actor's conduct be both "extreme and outrageous." *Papieves v. Lawrence*, 437 Pa. 373, 377–81, 263 A.3d 118, 120–22 (1970); and *Jones v. Nissenbaum, Rudolph & Seidner*, 244 Pa.Super. 377, 383–85, 368 A.2d 770, 773–74 (1976).

We recognize that there is a great potential for rampant subjectivity in the assessment of whether certain conduct may be properly defined by two such imprecise adjectives as "extreme" and "outrageous." Our sensitivities may be different than those of, for example, the court in *Jones.* However, this matter is rather clearly brought into perspective by reviewing other cases where claims for IIED was alleged by an employee against an allegedly wrongdoing employer.

We thus focus upon the following recent local federal cases brought by employees alleging IIED under Pennsylvania law against their respective employers: *Bradshaw v. General Motors Corp.*, 805 F.2d 110, 113–15 (3d Cir.1986) (racial discrimination and harassment not actionable); *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1273–76 (3d Cir.1979) (misstatement that employee had serious disease actionable because the misstatement must have been found by the jury to have been made intentionally); *Hooten v. Pennsylvania College of Optometry*, 601 F.Supp. 1151, 1154–55 (E.D.Pa.1984) (sexual discrimination, harassment, and refusal to assist employee when she collapsed at work not actionable); *Shaffer v. National Can Corp.*, 565 F.Supp. 909, 914–16 (E.D.Pa. 1983) (repeated sexual harassment followed by mistreatment when advances were resisted is actionable); *Cautilli v. GAF Corp.*, 531 F.Supp. 71 (E.D.Pa.1982) (failure of employer to advise employee that it knew that it would soon be closing the division where he worked in inducing him to remain not actionable); and *Beidler v. W.R. Grace, Inc.*, 461 F.Supp. 1013, 1016 (E.D.Pa.1978), *aff'd*, 609 F.2d 500 (3d Cir. 1979) (harassment of employee, including threats that he would be given an unwanted "assistant," not actionable). *Cf. Zamboni v. Stamler*, 847 F.2d 73, 80–81 (3d Cir. 1988) (applying law of New Jersey, which has also adopted the RESTATEMENT (SECOND) OF TORTS, § 46, *supra*) (harassment of employee because of criticism of procedures of employer not actionable); and *Gordon, supra*, 340 Pa.Super. at 266–67, 489 A.2d at 1374 (letters of physicians described at page 9 *supra*, "do not rise to the level of atrosity" necessary to state an IIED cause).

We believe that the conduct in issue here is less "extreme" and less "outrageous" than that described in *any* of the foregoing cases. Yet, in all but *Chuy* and *Shaffer*, the employee's IIED claim was rejected. In our view, it is not "extreme" to express dissatisfaction with an employee, pay him less than he expected (although lending him $40,000.00), not provide him with a secretary, and publish one statement of seven words, in language which is strong but civil, in response to a request for such an evaluative statement. In our view, it is similarly not "outrageous" for an employer to charge, even falsely, a dismissed employee with having a poor attitude and producing unsatisfactorily. We believe that racial discrimination and repeated harassment, which was found not actionable as IIED in *Bradshaw*, is both more "extreme" and more "outrageous" than what the Debtor here encountered. Most analogous to 'he instant case among the foregoing would appear to be the facts of *Cautilli*, which involved a more serious charge than that here that an employer induced an employee to continue his employment with that employer to his extreme detriment. Present Circuit Judge Becker observed that the circumstances there "cannot be compared to, indeed, pales before" other circumstances in which recovery for IIED was deemed appropriate. 531 F.Supp. at 74. The Debtor's principal authority is *Chuy*, 595 F.2d at 1274–75, where an employer, intentionally and to serve its own ends, misinformed a newspaper reporter that the plaintiff had a dreaded disease. We believe that the facts of this case "pale before" those in *Chuy.*

We should note that certain factors absent from the allegations here, which we thought may have been present when we denied the motion to dismiss the original

barebones Complaint, could have supported a different result here. A *series* of false statements might be actionable. *Gratuitous* as opposed to requested negative evaluations of a discharged employee could be actionable. More colorful descriptions of the Debtor's alleged failures to perform might have justified a different result. However, none of these circumstances appear to be present here, even after the Debtor has been given two clear attempts to state a cause of action in IIED. We thus conclude that it would be an exercise in futility for the Debtor, unable to recite more dramatic allegations than those in the Amended Complaint after two attempts, to persist in asserting a cause of action for IIED in this proceeding.

We will therefore enter an Order granting the Defendants' motion to dismiss Count III of the Amended Complaint, but denying it as to Count II.