**Tobin FRYMIRE,**

v.

**PAINEWEBBER, INC., et al.**

**Civ. A. No. 89–1943.**

United States District Court,
E.D. Pennsylvania.

Nov. 1, 1989.

**508**

Jerome Ellis, Glenside, Pa., for Tobin Frymire.

Francis P. DeVine, Gale White, Philadelphia, Pa., for PaineWebber, Inc., et al.

Edward Sparkman, Philadelphia, Pa., Chapter 13 Standing Trustee.

## MEMORANDUM

GILES, District Judge.

### A. *Factual and Procedural Background*

This is an appeal from a final order of the bankruptcy court entered on February 10, 1989. 96 B.R. 525. This court has jurisdiction to hear such appeals pursuant to 28 U.S.C. § 158(a) and Bankruptcy Rule 8001(a).

In 1984, while a stockbroker at Merrill Lynch in Philadelphia, Tobin Frymire began negotiating with PaineWebber regarding the possibility of employment as a broker. Negotiations were had with Lee Lovejoy, the manager of PaineWebber's Philadelphia office. Plaintiff received a memorandum from Lovejoy with the heading "Terms of Employment." Thereafter, plaintiff resigned from Merrill Lynch, and began working for PaineWebber in September of 1984.

Plaintiff performed training duties for which he received no additional compensation. In December, he and Lovejoy discussed the compensation to be paid for those training duties. Frymire told Lovejoy that at Merrill Lynch he had been paid between ten and twenty thousand dollars for such training activities. Lovejoy then told plaintiff that he would attempt to get a salary of ten to twenty thousand dollars approved in the budget. However, the salary proposal was not approved. In April, plaintiff received $1300 as compensation for his training duties. Lovejoy explained that, instead of a salary, a production credit formula had been devised. Displeased by the amount of compensation, Frymire stopped accepting the training assignments.

In 1985, plaintiff's production as a broker totaled $95,647, which was far below the production expected. In 1986, his production declined further, dropping to $1,041 in June. In that month, Lovejoy asked plaintiff to resign. Plaintiff refused. Lovejoy terminated Frymire's employment at the end of July. Although PaineWebber made several attempts to place him elsewhere in the company, those efforts were unsuccessful.

In the fall of 1986, plaintiff returned to his previous position at Merrill Lynch. He authorized PaineWebber to dispatch an "Employment Verification Form" to Merrill Lynch. In completing the form, Lovejoy stated that Frymire had been discharged by PaineWebber and would not be rehired because of his "poor attitude and less than satisfactory production." Appellant's Brief on Appeal, Exhibit A, at 32.

On July 24, 1987, Frymire filed a petition for bankruptcy under Chapter 13. PaineWebber filed a proof of claim, contending that it was owed $30,000 by plaintiff. Plaintiff counterclaimed, asserting claims based on theories of breach of contract, fraud, defamation, and intentional infliction of emotional distress. Upon motion by PaineWebber, the bankruptcy court directed that Edward Sparkman, the trustee in bankruptcy, be made a party to the suit.

*See* 11 U.S.C. § 323(b) (the bankruptcy "trustee ... has capacity to·sue.")

Because plaintiff's action was in the form of a "counterclaim[ ] by the estate against persons filing claims against the estate," 28 U.S.C. § 157(b)(2)(C), the action fell within the definition of a "core proceeding," *see id.*, and the bankruptcy court retained jurisdiction. *See Granfinanciera v. Nordberg,* — U.S. —, —, 109 S.Ct. 2782, 2799, 106 L.Ed.2d 26 (1989). Plaintiff filed an amended complaint, in which he joined Lovejoy as a defendant. Upon motion, the claim for intentional infliction of emotional distress was dismissed. During September and October of 1988, the bankruptcy court held a trial and, thereafter, issued findings of fact and conclusions of law. In its final opinion and order, the bankruptcy court entered judgment for plaintiff on one of the contract claims and on PaineWebber's proof of claim. The court entered judgment for defendants on the remaining claims.

Plaintiff has appealed, contesting that portion of the judgment which was entered in favor of defendants and the amount of the judgment on the contract claim entered in his favor. Defendants have cross-appealed, contesting the judgment entered on the aforementioned contract claim and the judgment entered denying Painewebber's proof of claim. Plaintiff has moved to strike. For the reasons discussed below, the bankruptcy court's order is affirmed in part and reversed in part, and plaintiff's motion to strike the cross-appeal is granted.

### B. *Discussion*

#### 1. Standard of Review

When reviewing the factual findings of the bankruptcy court, this court must adhere to the "clearly erroneous" standard. The standard of review is stated in Bankruptcy Rule 8013, as follows:

On an appeal, the district court ... may affirm, modify, or reverse a bankruptcy judge's judgment, order or decree, or remand with instructions for further proceedings. Findings of fact,

whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

The third circuit has stated that district courts must follow this very restrictive standard of review, even if it is inconsistent with a local district court standard. *In re Morrissey,* 717 F.2d 100 (3d Cir.1983). The bankruptcy court's findings of fact must stand unless "the court is left with the definite and firm conviction that a mistake has been committed." *Brager v. Blum,* 49 B.R. 626 (E.D.Pa.1985).

However, "the 'clearly erroneous standard' does not apply to questions of law. Thus, where the question presented is solely one of law, no presumption of correctness applies. The bankruptcy court's legal conclusions, therefore, may not be approved without our independent determination of the legal questions." *In re Gilchrist Co.,* 410 F.Supp. 1070, 1074 (E.D.Pa. 1976) (citations omitted). *See Universal Minerals, Inc. v. C.A. Hughes & Co.,* 669 F.2d 98, 101–03 (3d Cir.1981) (district court's review of legal questions is plenary).

#### 2. Breach of Contract and Wrongful Discharge

The bankruptcy court construed plaintiff's complaint as stating claims for termination of contract without just cause and wrongful discharge. The latter claim sounds in tort, and is entirely distinct from the former claim, which sounds in contract. *See Novosel v. Nationwide Insurance Co.,* 721 F.2d 894 (3d Cir.1983). The bankruptcy court failed to note this distinction, and analyzed both the contractual and tort claims under the rubric of "wrongful discharge." However, despite this error in terminology, the bankruptcy court correctly identified and applied the legal standards governing the contractual and tort claims.

##### a. *Contractual Claim*

■■■ Under the Pennsylvania law of contracts,[1] an employee is ordinarily con-

---

1. The bankruptcy court found that Pennsylvania   law applied, and this finding has not been con-

sidered to be hired at will, subject to termination for any or no reason. *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974). An exception can arise if a contract specifies a definite time period for which the employee will be employed. *See, e.g., DiBonaventura v. Consolidated Rail Corp.*, 372 Pa.Super. 420, 539 A.2d 865 (1988). If the exception applies, the employee can only be terminated for just cause. *Id.*

■ Plaintiff argues that a memorandum from Lovejoy entitled "Terms of Employment" brought plaintiff's employment within the exception to the "at-will" rule. The memorandum, plaintiff argues, gave rise to a contract under which he could only be terminated for just cause. The bankruptcy judge ruled that the memorandum did not give rise to such a contract as a matter of law, precluding recovery under the contract theory. I need not decide whether the memorandum gave rise to a contractual just cause requirement. Assuming *arguendo* that the memorandum gave rise to such a requirement, plaintiff could still not recover. The bankruptcy court made a factual finding that PaineWebber had just cause to terminate plaintiff's employment and that finding was not clearly erroneous.[2] The court found, based on the evidence presented, that plaintiff's production was far below the parties' expectations, and that his attitude was poor. There is no evidence in support of the assertion that PaineWebber lacked just cause to terminate plaintiff.

### b. *Wrongful Discharge*

■ Under Pennsylvania law, a cause of action for wrongful discharge arises when an employee's discharge threatens public policy or there is a specific intent to harm the employee. *See Engstrom v.*

tested on appeal.

**2.** Assuming *arguendo* that the memorandum gave rise to a contractual relationship, the parol evidence rule would apply. *See Harrison v. Fred S. James, P.A., Inc.*, 558 F.Supp. 438, 443 (E.D.Pa.1983). During the trial, parol evidence was introduced regarding the nature of plaintiff's employment arrangement, including evidence regarding PaineWebber's alleged promise

*John Nuveen and Co., Inc.*, 668 F.Supp. 953, 958 (E.D.Pa.1987), *citing Novosel v. Nationwide Ins. Co.*, 721 F.2d 894, 898 (3d Cir.1983); *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974).

Frymire does not argue that the discharge violated public policy. He contends only that there was a specific intent to harm. In *Geary*, the Supreme Court of Pennsylvania defined a specific intent to harm as constituting "disinterested malevolence" or "ulterior purpose." *Geary*, 456 Pa. at 180, 319 A.2d 174. "Disinterested malevolence" has been defined "to mean that there was no proper interest involved in the malevolent act; that there was no reason for the action (other than an atavistic desire to hurt another)." *Tourville v. Inter-Ocean Insurance Co.*, 353 Pa.Super. 53, 56–57, 508 A.2d 1263, 1265 (1986), *appeal denied*, 514 Pa. 619, 521 A.2d 933 (1987). "Ulterior purpose" has been defined as "harmful action [that] is done with sufficient reason (unlike our first type), but is done with an ulterior motive-to harm the other party." *Id.* 353 Pa.Super. at 57, 508 A.2d at 1265.

The bankruptcy court found that plaintiff had not established a specific intent to harm. Appellant's Brief on Appeal, Exhibit A, at 30 n. 3. Plaintiff argues that he was deliberately misled by a false promise of a management position. However, as discussed in footnote 2 above, the evidence on this subject was conflicting, and was properly discounted by the bankruptcy court. There was no other evidence suggesting a specific intent to harm. Indeed, the evidence shows that after plaintiff was terminated, PaineWebber made a number of attempts to secure alternative employment for him within the company. The bankruptcy court's finding that there was

of a management position. Plaintiff argues that the bankruptcy court erred in refusing to consider this evidence. However, the court found, and plaintiff concedes, that the evidence was conflicting. The court's refusal to consider the evidence was based on the finding that the evidence was inconclusive. This court concludes that the decision to discount the evidence was not clearly erroneous.

no specific intent to harm plaintiff is not clearly erroneous. Accordingly, the bankruptcy court's rejection of the wrongful discharge claim is affirmed.

### 3. Fraud and Promissory Estoppel

■ Plaintiff contends that defendants committed fraud, allegedly by lying to him when he was hired. In order to prevail on a claim of fraud, plaintiff must demonstrate five essential elements. The elements are set forth in *Scaife v. Rockwell–Standard Corp.*, 446 Pa. 280, 285, 285 A.2d 451, 454 (1971), *cert. denied*, 407 U.S. 920, 92 S.Ct. 2459, 32 L.Ed.2d 806 (1972), as follows:

(1) a misrepresentation,

(2) a fraudulent utterance thereof,

(3) an intention by the maker that the recipient will thereby be induced to act,

(4) justifiable reliance by the recipient upon the misrepresentation, and

(5) damage to the recipient as the proximate result.

The bankruptcy judge determined that plaintiff had failed to establish misrepresentation, fraudulent intent, or proximate damages. Plaintiff argues that he was fraudulently promised a management position. However, as discussed above, the evidence on this subject was conflicting, and was properly discounted by the bankruptcy court. In addition, the evidence shows that defendants had met all of the "Terms of Employment" in the aforementioned memorandum. Finally, there was no proof offered of an intention to deceive plaintiff, and the alleged fraud was not shown to be a substantial cause of the damages to plaintiff. This court finds that the bankruptcy court was not clearly erroneous in ruling against plaintiff on the fraud claim.[3]

The bankruptcy court also found that plaintiff could not prevail under promissory estoppel. The elements of promissory estoppel are set forth in *Paul v. Lankenau Hospital*, 375 Pa.Super. 1, 9, 543 A.2d 1148, 1153 (1988) (citation omitted), as follows:

The asserted promise is such that

1) the promisor should reasonably expect to induce a definite action or forbearance on the part of the promisee;

2) it actually induces such action or forbearance; and

3) injustice can be avoided only by its enforcement.

■ The bankruptcy court incorrectly identified the elements of promissory estoppel, instead reciting the standard for equitable estoppel. *See Stolarick v. Stolarick*, 241 Pa.Super. 498, 509, 363 A.2d 793, 799 (1976). However, this error did not affect the bankruptcy court's analysis. The elements of promissory estoppel are virtually identical to the elements of equitable estoppel. The chief difference is that equitable estoppel "is a defense used to preclude a person from denying or asserting a claim," while promissory estoppel "may serve as an independent cause of action." *Paul*, 543 A.2d at 1152.

■ The bankruptcy court found that defendants had kept their promises to plaintiff, precluding recovery under promissory estoppel. This finding is not clearly erroneous. Plaintiff argues that he was falsely promised a management position, and that he relied on this promise. However, as discussed above, the evidence on this subject was conflicting, and was properly discounted by the bankruptcy court. Moreover, as discussed above, the evidence shows that defendants had met all of the "Terms of Employment" in the aforementioned memorandum.

### 4. Defamation

Upon plaintiff's reemployment, and with his authorization, Merrill Lynch requested that PaineWebber complete an Employment Verification Reference form. As plaintiff's former supervisor, Lovejoy completed the form, writing that Frymire was terminated for "poor attitude and less than satisfactory performance." Appellant's Brief on Appeal, Exhibit A, at 32. Plaintiff contends that Lovejoy's statement was erroneous, maliciously false and defamatory.

___

**3.** The alleged fraud regarding the salary for training duties is discussed below.

■ Pennsylvania law "recognizes the defense of a conditional privilege whenever a prior employer evaluates a former employee at the request of a prospective employer." *Zuschek v. Whitmoyer Laboratories, Inc.*, 430 F.Supp. 1163, 1165 (E.D.Pa.1977), *aff'd*, 571 F.2d 573 (3d Cir.1978). A conditional privilege can be abused if the prior employer (1) acts with malice or ill will, (2) does not believe in the truth of the statements, (3) although believing in the truth of the statements has no reasonable ground for so believing, or (4) makes a publication outside the scope of privilege. *Id.* at 1165–66.

■ The bankruptcy court concluded that Frymire could not prevail on his defamation claim. This conclusion is not clearly erroneous, as the statements fall squarely within the conditional privilege. No evidence was presented that Lovejoy acted with malice or ill will. Furthermore, there is every indication that Lovejoy believed in the truth of his statements, and that he had reasonable grounds for the statements. Finally, there was no publication outside the scope of privilege. The only recipient of the publication was Merrill Lynch, the party which requested the evaluation.

### 5. The Contract for Training Duties

As noted above, the bankruptcy court found that the memorandum from Painewebber entitled "Terms of Employment" did not constitute an enforceable employment contract. However, the court did find that the parties had entered into a separate contract for training duties by which plaintiff was to be compensated for that service at the rate of $20,000 annually. The bankruptcy court found that defendants had breached the contract and awarded $4,533.33 in damages.

Plaintiff challenges this award on two grounds. First, plaintiff contends that the bankruptcy court improperly "severed" the training agreement from the entire employment agreement, meaning that it was error "to find that a second contract was created." Second, plaintiff contends that the amount awarded under the second contract

was improper. For the reasons discussed below, this court finds that the bankruptcy court's findings of fact and conclusions of law on this issue were clearly erroneous.

■ "Pennsylvania law requires that for there to be an enforceable contract, the nature and extent of its obligations must be certain." *Skehan v. Bd. of Trustees of Bloomsburg State College*, 431 F.Supp. 1379, 1388 (M.D.Pa.1977) (citation omitted). "In any employment contract if the rate of pay is uncertain it will not be enforced." *Kassab v. Ragnar Benson, Inc.*, 254 F.Supp. 830, 832 (W.D.Pa.1966) (citations omitted).

In concluding that a contract for training duties existed, the bankruptcy court rested upon its finding that "Lovejoy in fact made a firm offer to the Plaintiff [for $20,000] and believed that he had authority to offer it." Appellant's Brief on Appeal, Exhibit A, at 35. This finding is contradicted by the testimony of both plaintiff and Lovejoy. During the trial, Lovejoy was asked what he told plaintiff regarding the $20,000 salary. Lovejoy testified that "I just said that since I have to get an amendment to the budget approved before we can do anything, I will just put in for a ten to $20,000 salary and we'll see what we can get approved." Record, Document 37, at 59. In response to the same question, plaintiff replied that "he said he's going to try to get it into the budget." Record, Document 36, at 56.

The bankruptcy court discounted Lovejoy's contention that he told plaintiff that the salary would have to be approved. The bankruptcy court relied on the deposition of Ann Haviland. The court reasoned that Lovejoy's "contention is easily disproved by the testimony of former PaineWebber secretary Ann Haviland ... that she *saw* a memorandum confirming that Lovejoy *had* offered payment in this amount to plaintiff." Appellant's Brief on Appeal, Exhibit A, p. 35 (emphasis in original).

However, Ms. Haviland's testimony reveals only that she saw a salary request form. Record, Document 41, at 33. Ms. Haviland testified that she did see the fig-

ure "$20,000" typed on the request form, but that she did not check as to whether the request was approved. *Id.* at 33–4. Ms. Haviland testified that "these forms have to be approved by the division. The branch cannot approve these forms." *Id.* at 33. She further stated that if the form was not approved by the division headquarters in New York, it would be destroyed and would "hold no meaning." *Id.* at 35.

Rather than disproving Lovejoy's contention, Ms. Haviland's testimony reinforces it. Lovejoy did not make a firm offer to plaintiff, but informed plaintiff that any compensation for plaintiff's training duties would be negotiated and approved by Lovejoy's superiors. In view of the testimony of Lovejoy, Ms. Haviland, and plaintiff himself, the bankruptcy court was clearly erroneous in concluding that Lovejoy had offered and the parties had agreed upon a $20,000 salary. Consequently, no contract was formed, precluding recovery for breach of contract.

■ Neither is recovery possible under a theory of promissory estoppel. While Lovejoy might have promised Frymire that he would *try* to secure approval for the salary, he offered no assurances that he would be successful. Consequently, no promise was made upon which plaintiff could justifiably rely. Plaintiff was told and understood that any amount of compensation would have to be approved as a budget item before it could be effective. Nor was there evidence of when the salary, if approved, would take effect. Finally, even the amount of the salary was uncertain, as plaintiff had requested a salary of between ten thousand and twenty thousand dollars. The claim for a $20,000 training salary fails both under a breach of contract theory and a promissory estoppel theory.[4] Accordingly, it was improper to award damages in the amount of $4,533.33, and this award must be vacated.

Finally, plaintiff argues that the damages awarded under the contract claim were too low, and should be supplemented by damages for emotional distress. This argument is unpersuasive. Plaintiff has proceeded under a contract theory, not a tort theory, and "damages for emotional disturbance are not ordinarily allowed in breach of contract cases." *Rodgers v. Nationwide Mutual Insurance Co.*, 344 Pa. Super. 311, 319, 496 A.2d 811 (1985). Even if they were available, they could not be awarded here, for there was no breach of contract.

Plaintiff also calls attention to his expert witness' testimony on damages for emotional distress. During the trial, plaintiff posed a hypothetical question to the witness regarding emotional distress. Defendant objected to the hypothetical as lacking a proper foundation, and the bankruptcy court sustained the objection. Plaintiff argues that the court's ruling was in error. However, since plaintiff cannot recover damages for emotional distress, any error by the bankruptcy court was harmless.

6. Motion to Strike the Cross Appeal

■ Bankruptcy Rule 8002(a) provides, in relevant part:

The notice of appeal shall be filed with the clerk of the bankruptcy court within 10 days of the date of the entry of the judgment, order, or decree appealed from. If a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 10 days of the date on which the first notice of appeal was filed.

Plaintiff has moved to strike the cross appeal on the grounds that defendants never filed a notice of appeal. Defendants do not deny that they failed to file the required notice, but argue that their timely filing of a Counterstatement of Issues on Appeal and Designation of Additional Documents for Record on Appeal can substitute for the notice of appeal. This argument is unpersuasive. Bankruptcy Rule

---

**4.** Furthermore, despite plaintiff's assertions, Lovejoy's behavior cannot be viewed as fraudulent. Lovejoy informed plaintiff that he would try to obtain the salary, and he did, in fact, seek ap-

proval for the salary. Accordingly, this court reiterates its conclusion that the bankruptcy court was not clearly erroneous in ruling against plaintiff on the fraud claim.

8006 permits a cross appellant to file a counterstatement and designation of additional documents only "if the [party] has filed a cross appeal." Since the filing of notice is a *prerequisite* to the filing of the counterstatement and designation of additional items, these items cannot substitute for the filing of notice.

This understanding of the notice requirement is supported by the third circuit's interpretation of Bankruptcy Rule 8002(a). In *In re Universal Minerals, Inc.*, 755 F.2d 309, 311–12 (3d Cir.1985) (citations omitted), the court found that "the ten day mandate of Rule 8002(a) has been strictly construed, requiring strict compliance with its terms ... Failure to file a timely notice of appeal thus deprives the district court of jurisdiction to review the bankruptcy court's order or judgment." Here, defendants have failed to file a timely notice of appeal, and they do not argue that this failure was due to excusable neglect. Accordingly, this court is without jurisdiction to entertain their cross appeal, and plaintiff's motion to strike the cross appeal is granted.

An appropriate order follows.

### ORDER

AND NOW, this 1st day of November, 1989, it is hereby ORDERED that:

1. The bankruptcy court's judgment in favor of plaintiff Tobin Frymire and against defendants PaineWebber, Inc., and Lee Lovejoy in the amount of $4,533.33 is VACATED and JUDGMENT is entered in favor of defendants on this claim.

2. In all other respects, the bankruptcy court's judgment is AFFIRMED.

3. Plaintiff Tobin Frymire's motion to strike the cross appeal is GRANTED.