### Karen L. GRUVER, Plaintiff,

v.

### EZON PRODUCTS, INC., Defendant.

### Civ. A. No. 1:CV–90–2078.

United States District Court,
M.D. Pennsylvania.

March 22, 1991.

Jonathan M. Crist and Arthur V. Diveglia, Arthur V. Diveglia, P.C., Harrisburg, Pa., for plaintiff.

Jason S. Shapiro, McNees, Wallace & Nurick; and Franklin A. Miles, Jr., Harrisburg, Pa., for defendant.

## MEMORANDUM

RAMBO, District Judge.

Before the court is defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) counts III and IV of plaintiff's complaint. The issues raised have been fully briefed, and the matter is ripe for consideration.

*Background*

Plaintiff Karen L. Gruver had been a warehouse worker employed by defendant Ezon Products. In her complaint, the allegations of which must be taken as true for the purpose of this motion, plaintiff states that during the course of her employment with Ezon she was subjected to various forms of sexual harassment by her supervisor, which, though reported to the company, went unpunished. Gruver alleges that this conduct led to an intolerable work environment, resulting in her constructive discharge in April 1989.

In November 1990 Gruver brought suit against her former employer, alleging that the company's conduct violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. (hereinafter Title VII), and three pendent state law claims. Count II of the complaint, the first of the state law claims, posits that plaintiff's rights under the Pennsylvania Human Relations Act, 43 Pa.Stat.Ann. §§ 951–963 (Purdon 1964) (hereinafter "PHRA") were violated by the company's conduct. In Count III, plaintiff argues that defendant, by allowing the harassment to go unpunished, breached a provision of an employment contract established by an employee handbook. Count IV lists a claim for intentional infliction of emotional distress.

Defendant brought this motion to dismiss the latter two claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

*Discussion*

**I. Breach of Employment Contract Claim**

■ In her complaint, plaintiff appears to be asserting that an employee handbook circulated by defendant established an employment contract with her. She does not appear to claim that she was entitled to be discharged without just cause under the contract, but rather that the company had breached one of the contract's terms to plaintiff's detriment. The term in question, excerpted from the handbook, reads:

**E. SEXUAL HARASSMENT**

It is the policy of Ezon Products Company to provide a work environment free of sexual harassment. Sexual harassment is defined as "unwelcomed sexual advances, requests for sexual favors and other verbal or physical conduct of a sexual nature" between any Ezon employees and extends to those with whom we conduct business, including outside vendors and customers.

Also, all management employees are strongly advised to avoid any social relationships with employees over whom they have supervisory control.

Sexual harassment will result in termination.

Employee Handbook at 23–24.

Plaintiff contends that the terms of the handbook, including the one cited above, became the guidelines for a unilateral employment contract when she accepted the job at Ezon. The clearest and most recent discussion of the standards for when a

handbook becomes part of an employment contract appears in *Morosetti v. Louisiana Land and Exploration Co.*, 522 Pa. 492, 564 A.2d 151 (1989). *Morosetti* concerned a class action suit by employees of a company who, when their employer was sold, were given the option of accepting severance pay or positions with the purchasing company. After accepting positions with the new company, the plaintiff employees then claimed that they were entitled to severance pay as well. The defendant company admitted having a severance pay policy in place, but that it was not communicated to employees. The trial court directed a verdict for the plaintiffs, holding that a corporate handbook constituted the offer of severance pay, and the acceptance of employment the acceptance of the severance offer. *Morosetti*, 564 A.2d at 152.

The Pennsylvania Supreme Court disagreed, and held that there was no contract for severance pay. The court was swayed by the fact that, though the defendant company from time to time issued flyers announcing various employee benefits, it never made known the severance pay policy. The guidelines for the policy were outlined in a manual for the use of the personnel manager, but not put into general circulation.

This court is cognizant that nowhere in *Morosetti* does the Pennsylvania Supreme Court hold that a handbook distributed to employees after the commencement of employment becomes part of an employment contract. In fact, Justice Zappala, in his concurrence, takes pains to point out this distinction:

> [T]his court has not yet addressed the issue as to whether an employee handbook unilaterally issued by an employer constitutes part of an employee's contract of employment, [nevertheless] the dicta in the majority's opinion may be construed prematurely as controlling.... Having concluded that the uncommunicated personnel manual could not be equated with a handbook, the majority's statement is of no precedential value. I write then only to emphasize that the issue of the effect of the distribution of

an employee handbook has not been resolved by this Court....

*Id.* 564 A.2d at 153 (Zappala, J., concurring).

The majority opinion appears to narrowly circumscribe the situations where portions of a handbook may become, unilaterally, part of an employment contract. The court stated that an offer must be based on more than a general awareness of the existence of a policy—the term must be "intended, definite [and] specific." The court went on to state that "[i]t is not sufficient to show they had a policy. It must be shown they offered it as binding terms of employment. A company may indeed have a policy upon which they intend to act, given certain circumstances or events, but unless they communicate that policy as part of a definite offer of employment they are free to change as events may require." *Id.* 564 A.2d at 152 (citation omitted).

In arguing that the Ezon handbook created a binding contract with her, plaintiff asserts that it was reasonable that she should interpret the language of the handbook as creating a contractual provision in her favor. She was a woman entering a male-dominated warehouse work environment, and the sexual harassment provision in the handbook states in no uncertain terms that employees who engage in sexual harassment *will* be terminated.

Plaintiff may be correct that this handbook section was sufficiently definite to create a term of her employment. However, *Morosetti* requires that, for a policy to become part of an employment contract, it must be part of the offer of employment—an *inducement* to join the company. Nowhere in her complaint does plaintiff state that she accepted employment at Ezon because of the anti-harassment section of the handbook or that the definite terms of the policy were made known to her prior to her acceptance. All the court can glean from the complaint is that Gruver became aware of the provision at some point in the course of her employment and that the handbook was distributed to her "upon commencement of her employment." Complaint at ¶ 17.

Gruver's situation is similar to the plaintiffs in *Morosetti*. Like them, she did not accept the benefit as a term of employment, but instead apparently became aware of the provision after commencing work. According to the facts specified in the complaint, a guaranteed harassment-free workplace was not an inducement to employment. Accordingly, Gruver has failed to plead that a contract for employment including an anti-sexual harassment term was in existence, and thus defendant's motion to dismiss count III must be granted.

II. Intentional Infliction of Emotional Distress Claim

■ Plaintiff appears to agree with defendant's assertion that plaintiff's claim for intentional infliction of emotional distress may be dismissed because § 303 of the Pennsylvania Workmen's Compensation Act, 77 Pa.Stat.Ann. § 481(a) (Purdon Supp.1990) presents the exclusive remedy for such a claim. Plaintiff, instead, urges the court to accept the theory that the complaint sets forth a claim for intentional infliction of emotional distress under retaliatory conduct standards discussed by this court in *Bowersox v. P.H. Glatfelter Co.*, 677 F.Supp. 307 (M.D.Pa.1988). In *Bowersox*, however, the court used a "retaliatory conduct" analysis to move a supervisor's conduct from the realm of the insulting and annoying to the realm of "outrageous" within the definition of the tort, not as a means of creating an exception to preemption by the state workmen's compensation statute.

The court's inquiry does not stop here, however. As a launching point, the court notes that it has consistently held that the courts of Pennsylvania recognize the tort of intentional infliction of emotional distress. *See Shoop v. Dauphin County*, No. 3:CV–89–1498, slip op. at 7–9 (M.D.Pa. April 11, 1990); *Bowersox*, 677 F.Supp. at 309–10.

The preemption section of the Workmen's Compensation statute reads:

(a) The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes ... on account of any injury or death as defined in section 301(c)(1) and (2)....

77 Pa.Stat.Ann. § 481(a) (Purdon Supp. 1990). The injuries covered exclusively by workmen's compensation include "an injury to an employe ... arising in the course of his employment and related thereto...." *Id.* at § 411(1). The statute does include some exceptions, though.

The term 'injury arising in the course of employment' ... shall not include an injury caused by an act of a third person intended to injure the employe because of reasons personal to him, and not directed against him as an employe or because of his employment; but shall include all other injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer....

*Id.*

In *Schweitzer v. Rockwell International*, 402 Pa.Super. 34, 586 A.2d 383 (1990), the Pennsylvania Superior Court considered the preclusive effect of the Workmen's Compensation statute on a claim for intentional infliction of emotional distress arising from a sexual harassment situation in a workplace. In *Schweitzer*, the plaintiff alleged that her supervisor had made lewd remarks to her and attempted to fondle her. When she refused, she was transferred to a different position. The *Schweitzer* court recognized that, under the Superior Court case *Mike v. Borough of Aliquippa*, 279 Pa.Super. 382, 421 A.2d 251 (1980), a fellow employee may be considered a third person who intends to injure an employee for personal reasons within the dictates of the Workmen's Compensation Act. In holding that the plaintiff's injuries at the hands of her supervisor fit within that category, and that common law tort claims were thus not preempted, the court stated that "the alleged emotional distress arose from harassment personal in nature and not part of the proper employer/employee relationship."

This court finds the Superior Court's reasoning in *Schweitzer* convincing. Here, as in *Schweitzer*, plaintiff's claims arise from alleged harassment, including physical

harassment, by a superior. This court, like the *Schweitzer* court, believes that harassment of a sexual nature in the workplace has nothing to do with work, but rather stems from reasons personal to the party foisting his attentions on a co-worker.

Defendant's reliance on *Poyser v. Newman & Company,* 514 Pa. 32, 522 A.2d 548 (1987) is misplaced, as explained in *Schweitzer. Poyser* involved a suit against a company for deliberate derilictions by the company, not by a particular third person.

Therefore, as plaintiff's claim for intentional infliction of emotional distress stems from alleged harassment by a third person who is acting from purely personal motivations, the court will allow the claim to go forward.

### ORDER

Pursuant to the accompanying memorandum, IT IS HEREBY ORDERED THAT defendant's motion to dismiss as it involves Count III of plaintiff's complaint is GRANTED; with regard to Count IV of the complaint, it is denied.