**Sheila Hickey GARVEY, Plaintiff,**

v.

**DICKINSON COLLEGE, et al., Defendants.**

No. CV–88–1924.

United States District Court, M.D. Pennsylvania.

April 11, 1991.

Kenneth A. Wise, Harrisburg, Pa., for plaintiff.

Douglas B. Marcello, Thomas, Thomas & Hafer, Harrisburg, Pa., for defendants.

## MEMORANDUM

McCLURE, District Judge.

## I. BACKGROUND

Plaintiff Sheila Garvey alleges in this Title VII action[1] that she was sexually harassed and subjected to gender-based discrimination from 1985 to 1987 while she was employed as a professor of drama at Dickinson College ("Dickinson") in Carlisle, Pennsylvania. In addition to Dickinson,

---

**1.** The Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., ("Title VII").

Garvey names as defendants George Allan, Ph.D., Dean of the College, and David Peck, M.F.A., formerly an Associate Professor of Drama at Dickinson and Garvey's immediate supervisor from 1985 to 1987.[2]

In her amended complaint,[3] Garvey alleges, in addition to the federal cause of action under Title VII (Count I), pendent state claims for (1) intentional and negligent infliction of emotional distress (Count III) and (2) defamation (Count IV).[4] She seeks both compensatory and punitive damages. (Plaintiff's amended complaint, filed January 11, 1989)

Trial is scheduled to commence the week of May 28, 1991, and several motions are currently before the court. In addition to a motion for summary judgment[5] filed by defendants Dickinson College, Allan, and Peck on November 5, 1990, there are two related motions: (1) a motion filed January 30, 1991 by plaintiff seeking court approval to supplement the record;[6] and (2) a motion filed December 31, 1990 by defendants to strike plaintiff's statement of undisputed facts.[7]

After reviewing the evidence of record[8] and considering the arguments advanced by the parties, we will enter an order (1) granting defendants' motion to strike plaintiff's statement of undisputed facts; (2) granting plaintiff's motion to supplement the record with an affidavit by Kenneth Wise, Esq.; and (3) granting, in part, defendants' motion for summary judgment. Defendants' motion for summary judgment is granted with respect to plaintiff's claims for defamation, negligent and intentional infliction of emotional distress, and her Title VII claims based on the letter of refer-

ence written by Allan for Peck ("Peck letter of reference"). Defendants' summary judgment motion is denied in all other respects.

## II. DISCUSSION

### A. Defendants' motion to strike plaintiff's statement of undisputed facts

█ Plaintiff filed a statement of undisputed facts on December 17, 1990.[9] She has not countered defendants' motion for summary judgment with a like motion, and defendants argue that the Local Rules make no provision for, and do not allow, the nonmoving party to file his or her own statement of undisputed facts. Defendants argue that Local Rule 401.4 provides only that the moving party may file such a statement, to which the non-moving party is obliged to respond, and point out that there is no comparable provision authorizing the non-moving party to file his or her own statement. For that reason, defendants ask the court to strike plaintiff's statement.

Plaintiff has not filed a response to defendants' motion to strike, the filing deadline has passed, and the court has not granted any filing extensions. Local Rule 401.6 requires that opposing briefs be filed within fifteen days after service of the movant's brief. Rule 401.6 states that if no opposing briefs are timely filed, the court may deem the motion unopposed. Pursuant to Local Rule 401.6, we deem defendants' motion to strike unopposed and will issue our ruling accordingly.

Based on plaintiff's failure to oppose this motion, as well as our view that defen-

---

**2.** This court's order dated January 18, 1991 (Record Document No. 76) dismissed Count II of plaintiff's amended complaint which alleged a violation of 42 U.S.C. § 1983.

**3.** Record Document No. 6.

**4.** Although plaintiff's amended complaint contains allegations suggesting that defendants interfered with her prospective contractual relations (Count IV), she has indicated that she did not intend to plead a cause of action on that claim. (Plaintiff's opposing brief, filed December 17, 1990, p. 20)

**5.** Record Document Nos. 48, 50, 69 and 73.

**6.** Record Document Nos. 77, 81 and 85.

**7.** Record Document Nos. 72 and 74.

**8.** For purposes of ruling on the motions before us, we considered all pleadings, as well as the transcripts of the depositions of Sheila Garvey, David Peck, George Allan, Christine Villardo, Margaret Garrett, James Drake, David Kranz and Truman Bullard, and the affidavit of Kenneth A. Wise, Esq., plaintiff's counsel.

**9.** Record Document No. 79.

dants' interpretation of Local Rule 401.4 is correct, we will grant defendants' motion to strike.

### B. *Plaintiff's motion to supplement the record*

■ Plaintiff seeks leave from the court to supplement the record with an affidavit by plaintiff's counsel, Kenneth A. Wise, Esq. Wise's affidavit is offered to counter defendants' contentions that (1) plaintiff's Title VII claims against Allan should be dismissed because he was not named as a respondent in the charges which she filed before the Pennsylvania Human Relations Commission ("PHRC"),[10] and (2) portions of her Title VII claim should be dismissed as untimely filed.

Plaintiff offers the affidavit to show that Allan was, in fact, aware of the nature of the charges she had filed, equally aware that some of the allegations were against him, and that he had personally participated in proceedings before the PHRC. Wise states in his affidavit that: (1) Allan was present at a fact-finding conference held before the PHRC in March, 1988, which was also attended by defense counsel J. Thomas Menaker, Esq.; and (2) "the question of timeliness of plaintiff's filing of the charges with the ... [PHRC] was never raised before the agency neither [sic] at the pre fact [sic] finding conference proceedings or at the fact finding conference itself."

Defendants oppose plaintiff's motion on several grounds, none of which we find compelling. Allowing Garvey to supplement the record with Wise's affidavit will not result in any delays, nor will it unfairly surprise defendants with new evidence which they have no means to counter or dispute. For those reasons, we will grant plaintiff's motion and will consider Wise's affidavit in ruling on defendants' motion for summary judgment.

### C. *Defendants' motion for summary judgment*

#### 1. Standard of review

Summary judgment is appropriate if the "pleadings, depositions, answers to inter-

rogatories, and admissions on file, together with the affidavits, if any, show that *there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*" Fed.R. Civ.P. 56(c) (Emphasis supplied).

... [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, an on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ The moving party bears the initial responsibility of stating the basis for its motions and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. He or she can discharge that burden by "showing ... that there is an absence of evidence to support the nonmoving party's case." *Celotex, supra,* 477 U.S. at 323 and 325, 106 S.Ct. at 2552 and 2554.

■ Issues of fact are "genuine only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph,* 842 F.2d 689, 694 (3d Cir.1988), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Material facts are those which will affect the outcome of the trial under governing law. *Anderson, supra,* 477 U.S. at 248, 106

---

**10.** See the discussion at pp. 1186–88 *infra.*

S.Ct. at 2510. In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *White v. Westinghouse Electric Company*, 862 F.2d 56, 59 (3d Cir.1988).

2. Timely filing of Title VII charges

Garvey bases her Title VII claim on four alleged incidents: (1) sexual harassment by Peck; (2) Dickinson's inadequate response to that situation; (3) Dickinson's decision not to renew her teaching contract—i.e. retaliatory discharge; and (4) defamatory remarks [11] in the Peck letter of reference. (Plaintiff's amended complaint, filed January 11, 1989, paras. 18 and 41)

Defendants contend that the first two of these claims are time-barred because Garvey did not file charges with the PHRC [12] within 180 days of the alleged occurrences, as is required by 42 U.S.C. 2000e–5(e) and 43 P.S. § 959(g).[13] *Trevino–Barton v. Pittsburgh National Bank*, 919 F.2d 874, 878 (3d Cir.1990).

■ Preliminarily, we address Garvey's challenge to defendants' right to raise this issue at this stage of the case. She argues that the statutory filing requirements are in the nature of a statute of limitations defense and are, therefore, waivable. She contends that defendants waived this issue by failing to raise it before the PHRC.

The Third Circuit has held that plaintiff's non-compliance with the statutory filing deadlines is a waivable defense akin to a statute of limitations defense. *Schafer v. Board of Public Education*, 903 F.2d 243, 251 (3d Cir.1990). However, the courts of this district have also held that the defendant's failure to raise the late-filing defense in agency proceedings does not require that it be deemed waived, since administrative proceedings are not adversarial by nature and do not give the defendant an appropriate forum to object to the timeliness of plaintiff's charges. *Byrnes v. Herion*, 757 F.Supp. 648, 651 (W.D.Pa. 1990). Under the circumstances, we find that defendants' failure to raise this issue before the PHRC does not operate as a waiver.

■ We turn, then, to the merits of defendants' argument. The following relevant dates are not in dispute: Garvey filed charges with the PHRC on August 18, 1987, and with the Equal Employment Opportunity Commission ("EEOC") on November 16, 1987. January, 1986 was the last time that Peck made suggestive or inappropriate remarks directed to Garvey, although his harassment of other women at the college allegedly continued after that date.[14] (Garvey deposition, April 22, 1990, pp. 128–29.)

11. From the pleadings and briefs, it is not clear whether plaintiff is advancing the defamation claim as part of her Title VII claim or merely offers it as further evidence of Dickinson's discriminatory policies. For purposes of ruling on the motions before us, we assume that she did intend to include this incident as a part of her Title VII claim.

However, our ruling that she has failed to establish the elements of a cause of action for defamation (See pp. 1187–90 *infra.*) is controlling. This means that plaintiff may offer the Peck letter as evidence of the college's attitude toward her and its reasoning in failing to renew her contract (assuming it is otherwise shown to be admissible), but that she may not recover for the letter as an independent element of her Title VII claim.

12. "Under the statutory scheme, no charge may be filed with the EEOC in a state, such as Pennsylvania, which provides an administrative remedy for discrimination until the charge is first filed with the state agency and either (1)

sixty days elapses or (2) the agency terminates its proceedings." *Trevino–Barton, supra,* 919 F.2d at 878–79, citing § 706(c) of Title VII, 78 Stat. 260, as amended in 1972, 86 Stat. 104, 42 U.S.C. § 2000e–5(c) and *Mohasco Corp. v. Silver,* 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980).

13. Defendants do not dispute that Garvey's charges with the PHRC were filed within 180 days of notification that her teaching contract would not be renewed. Nor do they dispute that she commenced this action within 90 days of issuance of the "right to sue letter" as is required by statute. A copy of plaintiff's "right to sue letter" is attached to her amended complaint as Exhibit "A".

14. Garvey alleges in her amended complaint that: "Similar incidents occurred throughout 1986 and into 1987, comments [were] directed both at Plaintiff, other female individuals, and about other female individuals." (Amended complaint, filed January 11, 1989, para. 18(e)).

Although Garvey concedes that Peck did not make any suggestive remarks to her, personally, after January, 1986, she alleges that he continued a campaign of harassment against her throughout the 1986–87 school year. She attributes this campaign to hostility generated by her role in exposing his inappropriate behavior towards her and other female staff members and students. Specifically, she alleges that Peck interfered with her courses, excluded her from the departmental decision-making process, and used divisive tactics to curry favor for himself among other members of the department and to alienate her from colleagues. (Garvey deposition, May 22, 1990, pp. 267–71 and 273.)

Garvey testified in depositions:

A. He [Peck] was—my major contribution I think to the department was in performance and he was shifting me aside out of performance and **he was shifting me aside out of performance courses.** So I had to actually make up new courses.

Q. What courses was it that he was taking over of yours?

A. Acting classes.

Q. What courses did you then move to teach?

A. Directing. I'm trying to remember the specific courses. It seems to me I invented a few.

Q. Such as?

. . . .

Q. **You say shoving me on the side in a number of my work area. What was meant by that?**

A. **That I was not included in decision making on certain things. My recollection is that David Peck stopped having departmental meetings.**

Q. When did this occur?

A. When he was first hired we used to have departmental meetings.

Q. That would have been starting the fall of '85.

A. That's right. Those stopped so that when decisions were made, whatever—a chairman gets certain things. I mean, the department I'm in now, the chairman gets things in the mail, issues that need to be raised in the department. He goes through them with us. That happens for any chairman in the department. At Dickinson, whatever things that needed to be decided, I was no longer privy to because those departmental meetings were taken away.

Q. Who was privy to them?

A. Just David Peck or whoever he cared to talk to about it privately in the department.

(Garvey deposition, May 22, 1990, pp. 238–39. Emphasis supplied. See also: Garvey deposition, May 22, 1990, pp. 268–70.)

Garvey contends that Peck's interference with her teaching, his exclusion of her from the departmental decision process, and the stress created on her by his divisive tactics diverted her attention from her work and impaired her ability to function effectively on the job.

She further contends that her role in exposing Peck's harassment of women in the drama department was directly linked to the non-renewal of her teaching contract. She believes that she was "blackballed" by the Review Committee because the Committee disapproved of her role in the Peck matter. She contends that this situation caused certain members of the administration to perceive her as a troublemaker who was unable to get along with her colleagues in the department and blamed her for the lack of cohesiveness in the department.[15] Its decision not to re-

She has not, however, offered any evidence of specific instances, occurring after January, 1986, when Peck directed derogatory or suggestive remarks at her personally.

15. Garvey alleges, in her amended complaint:
22. On February 13, 1986, Plaintiff had a meeting with Defendant Allen, Defendant Nichols, and /Dean Garrett. She made a re-

port on the incidents of sexual harassment by Defendant Peck towards her and towards the other students. Plaintiff told Defendant Allen he [sic] feared that the students were being seriously harmed and the if Peck remained on the job, worse things would happen.
23. A few days after the February 13, 1986 meeting ... Plaintiff met with Defendant Nichols to find out what the administration

new her teaching contract and, consequent denial of the opportunity to obtain tenure, was the direct result, she contends, of these inaccurate perceptions. (Plaintiff's amended complaint, January 11, 1989, paras. 31 and 41 and Garvey deposition, April 3, 1990 at pp. 187, 191, 202–03, 220–21, 224, 230, 251–52, 260, 264–65, 275–77, 278, 285–87, and 288–89.)

■ Garvey asserts that this series of events allows her to pursue a Title VII claim even though the violations she alleges began more than 180 days prior to the date she filed a complaint with the PHRC. Her basis for this argument is the continuing violations theory. This theory allows a plaintiff to pursue a Title VII claim for discriminatory conduct which began outside the limitations period if she can demonstrate that the conduct alleged is part of an on-going practice or pattern of discrimination effected by the employer. *Bronze Shields, Inc. v. New Jersey Department of Civil Service*, 667 F.2d 1074, 1080–84 (3d Cir.1981), *cert. denied*, 458 U.S. 1122, 102 S.Ct. 3510, 73 L.Ed.2d 1384 (1982). To rely on this theory, the plaintiff must prove that a violation occurred within the limitations period and that such violation is "reasonably related" to prior discriminatory acts alleged. *Jewett v. International Telephone and Telegraph Corp.*, 653 F.2d 89, 91–93 (3d Cir.1981), *cert. denied*, 454 U.S. 969, 102 S.Ct. 515, 70 L.Ed.2d 386 (1981). Isolated or sporadic incidents of discrimination, even if intentional, are not sufficient to establish the requisite pattern. *Jewett, supra*, 653 F.2d at 91–93. Nor is it sufficient to show only that plaintiff suffered a loss within the limitations period as a result of prior discriminatory acts. *Delaware State College v. Ricks*, 449 U.S. 250, 256–57, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980).

After considering the facts of record, and giving plaintiff the benefit of all reasonable inferences, as we must, we find that she has demonstrated sufficient connection between the non-renewal of her contract and Peck's harassment during 1986–87 and the events which preceded those actions, and on that ground, will allow her to proceed to trial on all Title VII claims alleged. See: *West v. First Pennsylvania Bank, N.A.*, Civil No. 89–4730, slip op. at 6, 1990 WL 106858 (E.D.Pa. July 25, 1990), (Plaintiff had sufficiently shown a series of acts of racial and/or gender-based discrimination that were part of a pattern by pointing to proof that she had been excluded from a training program, denied a salary adjustment in conjunction with promotion, given low performance ratings, harassed and subjected to retaliation for complaining about these incidents.) and *Porta v. Rollins Environmental Services*, 654 F.Supp. 1275, 1281 (D.N.J.1987), *affirmed without opinion*, 845 F.2d 1014 (3d Cir.1988). Cf. *Cuffy v. Getty Refining & Marketing Co.*, 648 F.Supp. 802, 809–10 (D.Del.1986), (District court rejected application of the continuing violation theory, basing its ruling in part on the absence of any "intrinsic connection" between the events demonstrating a pattern of discrimination.)

■ Although we are somewhat troubled by Garvey's admission that she perceived herself to be the target of hostility on the part of administrative officials as early as the spring of 1985, we find that this is not enough to outweigh the other factors indicative of a continuing violation. Garvey's awareness that she was being penalized for her role in bringing the alleged indiscretions of Peck to light imposed on her an obligation to assert her rights promptly under Title VII. Retaliation against an employee for reporting or pursuing Title VII violations is in and of itself a violation,[16] and it was incumbent on Gar-

had planned to do about the situation with Defendant Peck. In response, Defendant Nichols implied to Plaintiff that she was the trouble maker [sic] and the Defendant Peck was the chair of the department and that she [Plaintiff] was going to have to accept that. Defendant Nichols also indicated her displeasure that the word of sexual harassment had

gotten out to the student body, and implied that it was Plaintiff who had 'leaked the information to the students.'

16. 42 U.S.C. § 2000e–(3)(a) provides that it is: an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice

vey to assert that violation on a timely basis. Title VII plaintiffs do not have the privilege of adopting a "wait and see" attitude, as Garvey seems to argue was her privilege, before filing an administrative action to vindicate their rights. *Ricks, supra.*

 In a related argument, Garvey asserts that she did not suffer harm until the college refused to renew her teaching contract, and that it was, therefore, that incident which triggered the limitations period. We reject that argument for the reasons just discussed and because it is contrary to the United States Supreme Court's holding in *Ricks, supra,* 449 U.S. at 256–57, 101 S.Ct. at 503 (The Title VII limitations period began when the college announced that the plaintiff/professor would not receive tenure and would be granted a one year "terminal contract", not on the date of his ultimate discharge from the college upon expiration of his one year "terminal" contract.) It is the violation itself, not some subsequent harm which may flow from it, that triggers the start of the limitations period. *Ricks, supra.*

We find, however, that these concerns do not outweigh the other factors favoring application of the continuing violation theory, at least to the extent that we find that Garvey is entitled to proceed to trial on all Title VII claims alleged, with the exception of her claim based on the Peck letter of reference, as discussed above. We make no ruling, however, as to her ultimate right to recover on the claims pursued under this theory.

3. Merits of plaintiff's Title VII claim

 Defendants argue that plaintiff has failed to adduce evidence sufficient to establish a prima facie case under Title VII. To carry her burden of persuasion, Garvey must show, by a preponderance of the evidence that:

1. She is a member of a protected class;

2. An adverse job action was taken against her;

3. The position remained vacant and was filled by an individual who is not a member of a protected class; and

4. She was otherwise qualified for the job.

*Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981), ("*Burdine*"); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Roebuck v. Drexel University,* 852 F.2d 715, 726–27 (3d Cir. 1988).[17]

Garvey has established all of these elements. The record demonstrates that: (1) she is female; (2) her teaching contract was not renewed; (3) she was the object of harassment by Peck, her immediate supervisor; (4) she protested Peck's behavior toward her and other females to the college administration; (5) a male was hired to fill the vacancy created by her departure; and (6) she was qualified to teach drama at Dickinson.

Only one element requires discussion: Garvey's qualifications for the job. Garvey has alleged that she was qualified to perform the job, and under *Sorba v. Pennsylvania Drilling Company, Inc.,* 821 F.2d 200 (3d Cir.1987) (Age Discrimination in Employment Act case) her opinion, if credible, is sufficient to establish the qualifications element of a prima facie case. Although there is evidence that Dickinson was dissatisfied with her teaching capabilities and that this dissatisfaction was expressed to her before Peck was hired to chair the department, this evidence is not so overwhelming as to prevent her from establishing a prima facie case on the claim of retaliatory discharge.

 Garvey also asserts a "hostile environment sexual harassment claim" based on Peck's alleged continuing harassment of Garvey and other females in the depart-

---

by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceedings, or hearing under this subchapter.

**17.** The *McDonnell Douglas* standard is "not inflexible, and a particular factual situation may

call for a variation of the evidence sufficient to constitute a prima facie case." *Burdine, supra,* 450 U.S. at 253, 101 S.Ct. at 1093.

ment.[18] *Meritor Savings Bank, F.S.B. v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). The Third Circuit recently reiterated the elements necessary to make out a claim of this type. The plaintiff must show that (1) employees suffered intentional discrimination because of their sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondeat superior liability. *Drinkwater v. Union Carbide Corp.*, 904 F.2d 853, 860 (3d Cir. 1990), (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 (3d Cir.1990). Garvey has demonstrated the existence of these elements to a degree sufficient to establish a prima facie case. (See the discussion at pp. 1181–83 *supra* and Garvey deposition references cited therein.)

■■■ Once a prima facie case is established, the burden shifts to the defendants to articulate a legitimate non-discriminatory reason for its failure to renew her teaching contract. If that is accomplished, the burden of persuasion then reverts to the plaintiff, and requires her to show that the proffered rationale is a mere pretext or fabrication masking an intent to discriminate against her on the basis of gender.

The ultimate burden of persuasion rests with the plaintiff. *McDonnell Douglas, supra,* 411 U.S. at 802, 93 S.Ct. at 1824 and *Roebuck, supra,* 852 F.2d at 726.

■■■ In a discrimination case based on the denial of tenure or renewed employment, the plaintiff is not required to show that she was discriminated against at every stage of the evaluation process. It is permissible for the trier of fact to find that a discriminatory animus operating at any level of the review process played a role in the assessment of plaintiff's qualifications and affected the ultimate decision. *Roebuck, supra,* 852 F.2d at 727.

The reasons articulated by Dickinson for declining to renew Garvey's teaching contract are its dissatisfaction with her teaching abilities, the students' perception of her as disorganized and ineffectual and her continued inability to interact effectively with other members of the drama department. Dickinson has expressed concerns that she was a divisive force within the department and demonstrated a marked inability to cooperate productively with her colleagues. These concerns were communicated to Garvey in evaluation/review letters written by Dean Allan at the conclusion of the 1983 and 1984 school years—before Peck was hired to chair the drama department. (Garvey deposition, April 3,

---

**18.** Although plaintiff does not specifically pled a hostile environment sexual harassment claim, denominated as such in her amended complaint, she makes allegations which go to a hostile environment claim, and we assume that it was her intent to plead such a claim. On this issue, she alleges, in relevant part, that:

18. Starting in the Fall of 1985, Defendant Peck exhibited a course of sexually suggestive conduct towards Plaintiff, which she found to be annoying, offensive, and distracting..... [Allegations detailing specific incidents omitted.]
. . . .
21. On February 12, 1986, Defendant Peck came to see Plaintiff.....Peck became extremely agitated and angry with Plaintiff during the discussion [regarding plaintiff's conduct in reporting an incident to the administration]. As a result of this, Plaintiff began to fear Defendant Peck and what he might do to her and other female students.
. . . .
24. During the Spring of 1986, Defendant Nichols continued to receive complaints about Defendant Peck from several students. The students communicated to Defendant Nichols incidents of sexual harassment by Defendant Peck towards female students. Neither Defendant Nichols nor any other Defendant took any action to reprimand, counsel or otherwise deter Defendant Peck.
. . . .
26. Defendants Dickinson College, Allen and Nichols became aware that Defendant Peck's conduct was continuous, at least as early as the early Fall of 1986. Despite receiving word of these incidents, said Defendants took no effort to remove Defendant Peck, or counsel or reprimand him, or even to further investigate the indicents.
. . . .
30. The decision to deny Plaintiff tenure was motivated in whole or substantial part by the desire of Defendants Dickinson College, Allen and Nichols to cover up the incidents of sexual harassment among the faculty, and to penalize Plaintiff for complaining of sexual harassment and requesting action by the administration.

1990, exhibits 2 through 6) Dickinson argues that these early statements of dissatisfaction with her teaching abilities negate any reasonable inference that her contract was not renewed due to the role she played in reporting Peck's conduct to the administration.

A plaintiff who has established a prima facie showing of discrimination "need only point to evidence establishing a reasonable inference that the employer's proffered explanation is unworthy of credence" to survive a motion for summary judgment. *Chauhan v. M. Alfieri Co.*, 897 F.2d 123, 127 (3d Cir.1990) and *Byrnes, supra*, 757 F.Supp. at 650. In an analogous situation, a college's refusal to grant tenure, the Third Circuit has held that the plaintiff satisfies this burden by showing that she was sufficiently qualified to be among the group of candidates competing for the position. *Roebuck, supra*, 852 F.2d at 726 (citing *Banerjee v. Board of Trustees of Smith College*, 648 F.2d 61, 63 (1st Cir.1981), *cert. denied*, 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981)).

Garvey points to evidence that various administration officials were critical of her role in reporting Peck's conduct and that she was the object of hostility due to her participation. She states that she was told point blank by Susan Nichols, the college affirmative action administrator, that she exhibited poor judgment in taking the matter up with Dean Allan and should have displayed more initiative in resolving the situation herself.

She also points to evidence which suggests, she contends, that the Review Committee gave her case only perfunctory consideration. She cites, as an example, the conduct of the committee members when they observed a class that she was teaching. She contends that they paid little or no attention to the class and, seated themselves at the rear of the classroom and talked among themselves throughout the

entire class. (Garvey deposition, May 22, 1990, pp. 260)

These incidents, as well as others discussed by plaintiff in her deposition, are sufficient to establish a reasonable inference that Dickinson's explanation is "unworthy of credence." She is, therefore, entitled to proceed to trial. See: *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 900 (3d Cir.1987), (ADEA case), (In ruling on defendant's summary judgment motion, the district court "should have considered whether evidence of inconsistencies and implausibilities in the employer's proffered reasons for discharge reasonably could support an inference that the employer did not act for non-discriminatory reasons, not whether the evidence necessarily leads to that conclusion that the employer did act for discriminatory reasons." Emphasis original.)

4. Charges filed before the PHRC

Defendants argue that Garvey's failure to name Allan as a respondent in proceedings before the PHRC or the EEOC, and, consequently to receive a right to sue letter against him precludes her from pursuing a claim against him in this action.[19] Ordinarily, a Title VII action may only be filed against a party previously named in the administrative action. 42 U.S.C. § 2000e–5(f)(1). The Third Circuit, however, recognizes an exception to this rule if the unnamed party shares a commonality of interest with the named party. *Glus v. G.C. Murphy Co.*, 629 F.2d 248, 251 (3d Cir.1981), *vacated on other grounds*, 451 U.S. 935, 101 S.Ct. 2013, 68 L.Ed.2d 321.

In *Glus*, the court listed four factors to be considered in determining whether the district court has Title VII jurisdiction: (1) whether the plaintiff could have, through reasonable efforts, ascertained the role of the unnamed party when the administrative charges were filed; (2) whether, under the circumstances, the interests of a named party are so similar to the unnamed party's

---

**19.** Defendants make the same argument with respect to plaintiff's failure to allege the defamatory remarks in the Peck letter of reference as part of her administrative claim. Because we

find that she has, in any event, failed to establish the elements of a cause of action for defamation, (See pp. 1186–88 *infra*), we need not address that argument.

that for the purpose of obtaining voluntary conciliation and compliance it was not necessary to name the latter as a respondent; (3) whether plaintiff's failure to name the party in question as a respondent resulted in actual prejudice to him; and (4) finally, whether the unnamed party in some way represented to the plaintiff that its relationship with the plaintiff was through the named party. These jurisdictional requirements are to be "liberally construed." *Glus, supra,* 629 F.2d at 251. Accord: *Schafer, supra,* 903 F.2d 243, 252 (3d Cir. 1990) and *Cook v. Applied Data Research, Inc.,* Civil No. slip op. at 4 (D.N.J. July 20, 1989), (available on Westlaw at 1989 WL 85068).

The requirement that a claimant bring an administrative action against the parties allegedly responsible for a Title VII violation before filing an action in federal court serves two purposes. The party charged receives notice that allegations have been made against it, and is accorded an opportunity to remedy the alleged violations before suit is filed. *Glus, supra.*

We find that Garvey's charges filed with the PHRC contained sufficient references to Allan to satisfy these requirements. Garvey's detailed recitation of the facts indicated the role Allan had played in the alleged discrimination against her.

Garvey's allegations in the PHRC complaint placed Allan on notice and gave him an opportunity to participate in voluntary conciliation efforts. Allan was, in fact, present at the fact-finding conference held before the PHRC in March, 1988, indicating to us that he was undeniably aware of the charges plaintiff had filed.[20] See: *Sandom v. Travelers Mortgage Services, Inc.,* 752 F.Supp. 1240, 1248–49 (D.N.J.1990); *Acampora v. Boise Cascade Corp.,* 635 F.Supp. 66, 71 (D.N.J.1986) (Plaintiff's reference to operations manager who was not named as a respondent, but who was referred to in the body of plaintiff's charge was sufficient "to confer jurisdiction over

the claim in the district court.") and *Cook, supra,* slip op. at 5–6 (Although plaintiff did not name the individual defendants in her complaint filed with the EEOC, in an affidavit filed in support of her claim, she specifically named each of the defendants and clearly explained the role each allegedly played in the alleged discrimination. The district court held that this was sufficient to satisfy Title VII's jurisdictional requirements by providing the EEOC with all relevant information needed "to conduct a proper investigation into the charges before permitting plaintiff to proceed with a lawsuit.")[21]

### 5. Plaintiff's defamation claim

Defendants argue that plaintiff has produced insufficient evidence to support her defamation claim against Dickinson and Allan. They point out that her claim is based solely on the following remarks made by Allan in a letter of reference written for David Peck:

> David came into a difficult situation at Dickinson: a [sic] idolized director just retiring **and a junior colleague hostile to the person being appointed over her. He is not able to overcome these debits, although he tried.** He initiated a number of value reforms in departmental procedures and decision making; he attempted to give curricular shape to his ideas for a theater arts major; he began to reach out to the other departments in cooperative ways.
>
> David is an accomplished actor, a good teacher, and an imaginative director, **a person willing to provide leadership or collegial support.**

(Plaintiff's opposing brief, filed December 17, 1990, p. 7. Emphasis added by plaintiff.) Defendants contend that these remarks are not defamatory and are, in any event, privileged, because they were stated in a letter of reference written for an ex-employee. See: *Zuschek v. Whitmoyer*

---

**20.** We permitted plaintiff to supplement the record with an affidavit from Kenneth Wise, Esq. attesting to the fact that Allan was present at the fact-finding conference held before the PHRC. See pp. 1180–81 *infra.*

**21.** For a list of cases which reached a similar conclusion, see: *Sandom, supra,* 752 F.Supp. at 1249.

*Laboratories, Inc.,* 430 F.Supp. 1163 (1977), *aff'd,* 571 F.2d 573 (3d Cir.1978).

Under Pennsylvania statutory law, a plaintiff must prove seven elements to establish a prima facie case of defamation:

1. The defamatory character of the communication;

2. Its publication by the defendant;

3. Its publication to the plaintiff;

4. The understanding by the recipient of its defamatory meaning;

5. The understanding by the recipient of it as intended to be applied to the plaintiff;

6. Special harm resulting to the plaintiff from its publication;

7. Abuse of a conditionally privileged occasion.

42 Pa.C.S.A. § 8343.

■■■■ Only statements of fact can afford a basis for a defamation action. Expressions of opinion cannot. Statements of fact and opinion intermingled can give rise to a claim based on the factual portions of the statement. *Dougherty v. Boyertown Times,* 377 Pa.Super. 462, 547 A.2d 778, 782–83 (1988) and *Restatement (Second) of Torts,* § 556.[22]

■■■ The plaintiff establishes defamatory character by showing that the statement in question tends to harm her reputation, lower her in the estimation of the community, or deter other persons from associating or dealing with her in a professional or business relationship. *Dougherty, supra,* 547 A.2d at 783.

■■■ Whether the challenged statements are capable of a "defamatory meaning" is determined, preliminarily, by the court. *Dougherty, supra,* 547 A.2d at 783. If the challenged statements can reasonably be construed as defamatory, the plaintiff has established a prima facie case and is entitled to try the issues raised. *Dougherty, supra,* 547 A.2d at 783. If the court is confronted with a situation in which the statements in question are susceptible to several interpretations, some of which are benign, some of which are not, the jury should decide how the statement is likely to be interpreted by the intended audience. *Dougherty, supra,* 547 A.2d at 783.

Garvey argues that the remarks in Allan's letter can reasonably be construed as defamatory. She contends that his reference to a hostile "junior colleague" is clearly a reference to her and would be interpreted as such by others in the academic community who read the letter. His reference to her as "hostile", she asserts, impacts negatively on her professional abilities since, "one of the essential elements necessary to the making of a successful college professor" is an ability to interact effectively with one's students and colleagues. Someone lacking this essential quality would not be perceived as a desirable employee or colleague.

Plaintiff's argument that hostile is a pejorative term to apply to a college professor is convincing. However, our principal difficulty with plaintiff's claim is the fact that nowhere in the letter is she mentioned by name. In this situation, the test is "whether the defamatory communication may reasonably be understood as referring to the plaintiff." *Zerpol Corp. v. DMP Corp.,* 561 F.Supp. 404, 410 (E.D.Pa.1983) (citing *Farrell v. Triangle Publications, Inc.,* 399 Pa. 102, 106, 159 A.2d 734 (1960)). "It is not enough that plaintiff understands the communication to be about him." *Zerpol, supra,* 561 F.Supp. at 410.

Although a recipient of the Peck letter of reference could, theoretically, find out, by making inquiries, who the purportedly hos-

**22.** *Restatement (Second) of Torts,* § 556 provides:

Defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion.

Comment B to section 566 provides:

The second type of expression of opinion, or mixed type, is one which, while an opinion in form or context, is apparently based on facts regarding the plaintiff or his conduct which have not been stated by the defendant or assumed to exist by the parties to the communication. Here the expression of the opinion gives rise to the inference that there are undisclosed facts which justify the forming of the opinion expressed by the defendant....

tile "junior colleague" was, it does not seem likely that a recipient of the letter, someone to whom Peck applied for a job, would be concerned about ferreting out that information. The recipient of the letter would be concerned principally with the information that it relays about Peck and his professional abilities, and not with information which it relays, incidentally, about another individual with whom the reader has no connection and, we would presume, no concern. It seems most unlikely that the recipient would know, simply from reading the letter, to whom Allan is referring, and more unlikely still, that he or she would make inquiries to learn the identity of this individual. We can think of no logical reason why a potential employer of Peck would be concerned about the identity of the colleague referred to in the letter. Although we could speculate that academia may be a "small world," this is an argument not even advanced by the plaintiff, and would, indeed, be pure speculation on our part. The only scenario of which we could conceive whereby the recipient of the letter would be concerned with the identity of the "hostile junior colleague" is a situation in which Peck and Garvey both simultaneously applied for the same job.[23] The identity of Garvey as the hostile junior colleague would then no doubt come to light and be a matter of concern to the recipient of the letter—the potential employer. Garvey has nowhere suggested that this occurred, or even raised the possibility that it might have occurred.

Under the circumstances, we find that the argument that this reference will somehow damage plaintiff's professional reputation is unsubstantiated. The link between the letter's reference to an unnamed junior colleague and harm to plaintiff's reputation is simply too attenuated.[24] See, e.g., *Zerpol, supra,* 561 F.Supp. at 412–15 (Court held as a matter of law that allegedly defamatory advertisements could not reasonably be interpreted as concerning plaintiff corporation or its products.)

### 6. Intentional infliction of emotional distress

■ Plaintiff's claim for intentional infliction of emotional distress is based on the same incidents as her Title VII claim: (1) sexual innuendos and derogatory comments by Peck; (2) Dickinson's alleged failure to take remedial action to correct these problems; (3) Dickinson's decision not to renew her teaching contract; and (4) the allegedly defamatory comments in the Peck letter of reference. (Plaintiff's amended complaint, filed January 11, 1989, paras. 48–50) Defendants argue that plaintiff's claim is barred on several grounds.

Preliminarily, we consider their assertion that Pennsylvania does not recognize a claim for intentional infliction of emotional distress. The answer to this contention is not straightforward, but requires a careful review of Pennsylvania and federal law—a project recently undertaken by the United States District Court for the Western District of Pennsylvania.

23. Although Garvey alleges in her amended complaint, that she "believes" that the Peck letter of reference was sent to "prospective employers of hers who ... identified her as the uncooperative faculty member", she has pointed to no evidence which substantiates this claim in her responses to defendants' summary judgment motion, and we are aware of none.

24. We note, parenthetically, that defendant's contention that this statement is privileged is rejected. Defendants argue that the privilege which allows an employer to comment on a former employee applies.

Allan's remark appears in a letter of reference written for Peck—an evaluation of Peck's professional abilities. This gives Allan leave to comment, without liability for defamation, on Peck's professional abilities, but does not give him the same leave to comment, without liability, on the abilities of others. See: *Zuschek v. Whitmoyer Laboratories, Inc.,* 430 F.Supp. 1163 (1977), *aff'd,* 571 F.2d 573 (3d Cir.1978).

Also without merit is defendants' contention that Allan's remarks in the letter are pure opinion and, therefore. not subject to defamatory interpretation.

A statement that a person is hostile implies that person's involvement in some quarrelsome activity or an expression of antagonistic views toward others. It therefore implies a statement of fact, which takes it outside the realm of pure opinion.

In *Rowe v. Marder*, 750 F.Supp. 718, 724 (W.D.Pa.1990), the court discussed the state of the law:

> Earlier Pennsylvania cases seemed to readily accept section 46 [25] as a legitimate, though undeveloped, cause of action ... (Citations omitted.) [M]ost later cases dealt with shaping the contours of the tort, rather than questioning its validity.... (Citation omitted.) This consistent development, however, was abruptly unsettled by *Kazatsky vs. King David Memorial Park*, 515 Pa. 183, 527 A.2d 988 (1987), in which the Pennsylvania Supreme Court explicitly stated ... Pennsylvania had never recognized section 46 as a valid cause of action. *Kazatsky*, 527 A.2d at 989.
>
> Naturally, the Pennsylvania Supreme Court's pronouncement is law which I must follow. The fact that it has not yet recognized the action, however, only requires that I, once again, predict whether it would do so if the issue were to come before it. The defendant argues that the opinion shows that the Pennsylvania Supreme Court does not approve of section 46 and thus would not adopt it if confronted with the question. At least two decisions of the Superior Court, she argues, have so held. See *Ford vs. Isdaner*, 374 Pa.Super. 40, 542 A.2d 137 (1988), *Daughen vs. Fox*, 372 Pa.Super. 405, 539 A.2d 858, 861 (1988). Neither case is unequivocal, but even if they were, I am 'free to reach a contrary result if [I] predict that the State Supreme Court would hold otherwise;' *Gruber [vs. Owens–Illinois, Inc.*, 899 F.2d 1366, 1369 (3d Cir.1990)] ... especially since other state cases may imply a contrary conclusion. See *Rinehimer vs. Luzerne County Community College*, 372 Pa.Super. 480, 494–96, 539 A.2d 1298, 1305 (1988); *Salerno vs. Philadelphia Newspapers*, 377 Pa.Super. 83, 87–88, 546 A.2d 1168, 1172–73 (1988). Furthermore, **this circuit has held that, 'absent a clearer statement from Pennsylvania's highest court, we remain bound by [earlier Third Circuit precedent]' which recognized @) 46. *Williams vs. Guzzardi*, 875 F.2d 46, 50–52 (3d Cir.1989). Although the question is a close one, it is almost uniformly held that Pennsylvania would, under proper conditions, allow recovery for intentional infliction of emotional distress.** See *Andrews vs. City of Philadelphia*, 895 F.2d 1469 (3d Cir.1990); *Silver vs Mendel*, 894 F.2d 598, 606 (3d Cir.1990). But see *Clemens vs. Gerber Scientific*, 1989 WL 3480 (E.D.Pa.) (Pennsylvania does not recognize @) 46); *Koch vs. AT & T*, 1989 WL 37123 (E.D.Pa.) (same).

*Rowe, supra*, 750 F.Supp. at 724–25 (Emphasis supplied.) See also: *Williams v. Guzzardi*, 875 F.2d 46, 50–52 (3d Cir.1989); *Gruver v. Ezon Products, Inc.*, 763 F.Supp. 772, 775 (M.D.Pa.1991), (Rambo, J.) and *Lee v. Wojnaroski*, 751 F.Supp. 58, 61 (W.D.Pa.1990) (Smith, J.). From the history of this cause of action in the Pennsylvania and federal courts, we, likewise, draw the conclusion that the federal courts recognize a cause of action for intentional infliction of emotional distress under Pennsylvania law.

The federal courts have further held that the proof requirements under Pennsylvania law are stringent and that, to recover, the plaintiff must show that the conduct complained of is "extreme or clearly outrageous". *Andrews, supra*, 895 F.2d at 1487, citing *Cox v. Keystone Carbon*, 861 F.2d 390, 395 (3d Cir.1988). Accord: *Rowe, supra*, 750 F.Supp. at 726, (The conduct alleged "must be sufficiently diabolical that any reasonable actor would know she was incurring liability. Pennsylvania requires that the outrageousness test protect defendants by the very extremity of the abomination required for liability.")

The court bears the initial responsibility of determining whether the conduct alleged is sufficiently outrageousness to justify recovery.

---

25. *Restatement (Second) of Torts*, section 46 provides:

One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

The court should satisfy itself in the first instance, not merely that there is a reasonable question about outrageousness, but that the conduct almost certainly is outrageous. Only then should the cause go to the jury for what may amount to little more than a veto power over a court's determination ...

*Rowe, supra,* 750 F.Supp. at 724–25.

In employment situations, the courts have held that such conduct is extremely rare and is limited almost exclusively to situations in which the employee was threatened with retaliatory conduct if she did not accede to sexual demands asserted by a supervisor or co-employee. The consensus has been that sexual innuendos, suggestive comments, and other conduct in the same vein are, in and of themselves, not sufficiently outrageous to support a cause of action. *Andrews, supra,* 895 F.2d at 1487 ("The extra factor that is generally required is retaliation for turning down sexual propositions."); *Cox, supra,* 861 F.2d at 395; and *Bowersox v. P.H. Glatfelter Co.,* 677 F.Supp. 307, 311 (M.D.Pa. 1988).

Applying these criteria to the facts before us, we find the evidence insufficient as a matter of law to show that the conduct plaintiff alleges defendants carried out is so outrageous that it supports a cause of action for intentional infliction of emotional distress. Plaintiff does not contend that she was at any time subjected to coercive demands from Peck, or any other employee of the college. Nor does she contend that she was subjected to threats if she refused to accede to sexual demands. Absent some evidence that she was subjected to threats or demands of that nature, the evidence is legally insufficient to support a cause of action. *Andrews, supra,* 895 F.2d at 1487 and *Rowe, supra,* 750 F.Supp. at 724–25.

### 7. Negligent infliction of emotional distress

■■■■ Garvey does not specifically plead a cause of action for negligent infliction of emotional distress. Her amended complaint does not specify whether she is alleging a cause of action for negligent or intentional infliction of emotional distress, or both. In her brief opposing defendants' motion for summary judgment, she mentions only intentional infliction of emotional distress, and makes no express reference to its negligence counterpart. (Plaintiff's amended complaint, filed January 11, 1983, Count III) We will, however, assume for purposes of ruling of defendants' motion, that she intended to assert and pursue both causes of action.

Defendants argue that plaintiff is precluded from pursuing this cause of action on several grounds. They contend, initially, that any claim for negligent infliction of emotional distress is barred by the Pennsylvania Workmen's Compensation Act. In support of that argument, they cite 77 Pa. S.A. § 481(a), which provides:

The liability of the employer under this act shall be exclusive and in place of any and all other liability to such employees ... or to anyone else entitled to damages in any action at law ...

The Act defines injuries for which workmen's compensation is the exclusive relief available to include "an injury to an employee ... arising in the course of his employment and related thereto ..." 77 Pa.S.A. § 411(1). It also lists the following exception to that definition:

The term 'injury arising in the course of employment' ... shall not include an injury caused by an act of a third person intended to injure the employee because of reasons personal to him, and not directed against him as an employee or because of his employment; but shall include all other injuries sustained while the employee is actually engaged in the furtherance of the business or affairs of the employer ...

Both Pennsylvania and federal courts have interpreted these provisions as exempting claims of infliction of emotional distress arising from sexual harassment in the workplace from the preclusive effect of the workmen's compensation act. *Gruver, supra,* slip op. at 6–7 and *Schweitzer v. Rockwell International,* —— Pa.Super. ——, 586 A.2d 383 (1990). Their reasoning is that common law torts of this nature are not preempted, since the distress alleged

arises from harassment that is personal in nature and is not part of any legitimate employer/employee relationship. *Schweitzer, supra.* "[H]arassment of a sexual nature in the workplace has nothing to do with work, but rather stems from reasons personal to the party foisting his attentions on a co-worker." *Gruver, supra,* slip op. at 9.

Defendants argue that the Pennsylvania Supreme Court decision in *Poyser v. Newman & Co., Inc.,* 514 Pa. 32, 522 A.2d 548 (1987) compels us to conclude that workmen's compensation is plaintiff's exclusive remedy. We disagree, and find that decision distinguishable for the same reasons stated by the Honorable Sylvia Rambo in *Gruver, supra.*

Although we are convinced that Garvey's claim for infliction of emotional distress is not barred by the Pennsylvania Workmen's Compensation Act, her claim falters in the face of the evidentiary requirements necessary to establish this claim. To recover under this theory, Garvey must show either that she "was in personal danger of physical impact because of the direction of physical force" against her or that she sustained an emotional injury as a result of a physical impact, or that it was reasonably foreseeable that she would suffer a mental injury as a result of physical impact caused by the defendants. *Krochalis v. Insurance Company of North America,* 629 F.Supp. 1360, 1372 (E.D.Pa.1985), citing *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979).

Proof of any of these three elements is wholly lacking. Sheila Garvey was not in personal danger of physical impact, nor did she suffer any physical impact as a result of any of the incidents she alleges. As discussed at length above, her claim is based on four incidents or sets of incidents: (1) suggestive remarks allegedly uttered by her immediate supervisor, Peck; (2) Dickinson's alleged failure to take remedial action against Peck; (3) Dickinson's refusal to renew her teaching contract; and (4) the Peck letter of reference. Based on these incidents, we can perceive no possible basis upon which a jury could reasonably find

that she has proven a claim for negligent infliction of emotional distress. See, e.g., *Krochalis, supra,* 629 F.Supp. at 1372 (Allegations by an employee asserting a claim for negligent infliction of emotional distress which were based on the auditing of his expense reports, the termination of his employment, and remarks uttered by a supervisor were insufficient as a matter of law to support a claim. Summary judgment was granted in defendants' favor.) Plaintiff's reliance on this theory is an attempt to force the facts of this case into a pattern to which this cause of action was not intended to apply.

■ Even if we were convinced that she could somehow establish these elements at trial, we would nevertheless find her claim to be barred by the statute of limitations. Under Pennsylvania law, the two year statute of limitations applies to a claim for sexual harassment. *Bougher v. University of Pittsburgh,* 882 F.2d 74 (3d Cir.1989); *Johnson v. Provident National Bank,* 700 F.Supp. 817 (E.D.Pa.1988) and 42 Pa.C.S.A. § 5524.

Defendants correctly contend that the only plausible basis for this claim is Peck's alleged sexual harassment of Garvey. It is undisputed that the last such incident occurred in January, 1986—more than two years before this action was filed in November of 1988. (Plaintiff's amended complaint, filed January 11, 1989, paras. 18–26 and Garvey deposition, April 22, 1990 at pp. 128–29) Therefore, any claim for negligent infliction of emotional distress is clearly time-barred.

Garvey argues that the events she alleges were part of a continuing course of conduct, and that the statute of limitations therefore did not begin to run until that course of conduct ended, which was within the two years preceding the November 23, 1988 filing date. Her authority for this argument is *Foley v. Pittsburgh Des Moines Co.,* 363 Pa. 1, 68 A.2d 517 (1950). Case law which tolls the statute of limitations to allow a plaintiff to recover for a continuing course of conduct does not apply to the facts presented here.

\* \* \*

For all of these reasons, we will enter an order granting summary judgment in defendants' favor for plaintiff's claims of negligent and intentional infliction of emotional distress and defamation. Plaintiff's Title VII claims remain for trial. A non-jury trial will be held.